FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR 31 2025

JEFFREY P. COLWELL
CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

(To be supplied by the court)

**CHAYCE AARON ANDERSON**, Plaintiff

v.

**Jury Trial requested:**
**(Please check one)**

__X__ Yes _____ No

**YVONNE "MISSY" WOODS (Colorado Bureau of Investigation Serologist), in her individual capacity and official capacity as laboratory analyst employed by State of Colorado,**

**RYAN FLORES (Warden – Centennial), in his individual capacity and official capacity as Warden of Centennial Correctional Facility,**

**JARED POLIS (Governor), in his official capacity as Governor of State of Colorado,**

**PHILIP J. WEISER (Attorney General), in his official capacity as Attorney General of State of Colorado,**

**MOSES "ANDRE" STANCIL (Executive Director), in his official capacity as Executive Director of the Colorado Department of Corrections**

**AMANDA RETTING, in her official capacity as Sex Offender Treatment and Monitoring Program Administrator and Department of Corrections Representative on the Sex Offender Management Board**

**KIMBERLY KLINE, in her official capacity as Chief of Behavioral Health at the Department of Corrections and Chair of the Sex Offender Management Board.**

**MALEBRANCHE (Major), in her individual capacity and official capacity as Major of Programs at Centennial Correctional Facility,**

**STRAWN (Captain), in his individual capacity and official capacity as Captain of Prison Operations for Kitchen at Centennial Correctional Facility,**

**MICHAEL RIVERA (Lieutenant), in his individual capacity and official capacity as acting Lieutenant for Kitchen at Centennial Correctional Facility,**

**STEER (Lieutenant), in his individual capacity and official capacity as acting Lieutenant for Kitchen at Centennial Correctional Facility,**

LAKEISHA SHARP, in her individual capacity and official capacity as Parole Board Member for the State of Colorado,

STEPHEN HOLMES, in his individual capacity and official capacity as Parole Board Member for the State of Colorado,

CORE CIVIC, in both their individual capacity and official capacity as contractor of Colorado Department of Corrections, a privately traded company on the Stock Exchange,

COLORADO BUREAU OF INVESTIGATION (C.B.I.), in both their individual capacity and official capacity as employer of YVONNE WOODS, disgraced serologist attributed with 1002 DNA tampered or omitted results,

CHRIS SCHAEFER, in both his individual capacity and official capacity as Director of Colorado Bureau of Investigation,

STAN HILKEY, in both his individual capacity and official capacity as Executive Director of Colorado Bureau of Investigation laboratory,

CITY OF FORT COLLINS, in their individual capacity and official capacity, employed Yvonne Woods, and utilized her services illegally to incarcerate Plaintiff's person,

 LARIMER COUNTY, in their individual capacity and official capacity, employed Yvonne Woods, and utilized her services illegally to incarcerate Plaintiff's person,

GORDON MCLAUGHLIN, in his individual capacity and official capacity as elected District Attorney of 8th Judicial District,

MATT MAILLARO, in his individual capacity and official capacity as Assistant Deputy Attorney working under McLaughlin, and appointed to resolve all cases Ms. Woods was an expert witness in,

STATE OF COLORADO, in the state's individual capacity and official capacity as the arbitrator of Justice in Plaintiff Anderson's cases,

GUI BOSCH, Warden of Crowley County Correctional Facility, in his individual and official capacity,

COLORADO DEPARTMENT OF CORRECTIONS, in their individual and official capacity.

 Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

**PRISONER COMPLAINT**

---

<div style="border:1px solid">

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

</div>

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Chayce Aaron Anderson #175290
Crowley County Correctional Facility
6564 St Hwy. 96
Olney Springs, CO 81062-8700
(Name, prisoner identification number, and complete mailing address)

N/A
 (Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

```
___    Pretrial detainee
___    Civilly committed detainee
___    Immigration detainee
_X_    Convicted and sentenced state prisoner
___    Convicted and sentenced federal prisoner
___    Other: (Please explain) _____
```

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    Yvonne "Missy" Woods
(Name, job title, and complete mailing address)

700 Kipling Street, Suite 1000
Lakewood, CO 80215

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*). Briefly explain:

Yvonne "Missy" Woods was acting under color of state and federal law when she deleted, omitted and manipulated DNA results in 1,003 criminal cases. As a result of her conduct, she was indicted on Tuesday, January 21st, 2025 on 102 Felony Counts, giving rise to challenge her conduct in Federal Court.

Defendant 1 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 2:    Ryan Flores, Warden at Centennial Correctional Facility,
(Name, job title, and complete mailing address)

4

Centennial Correctional Facility
600 Evans Rd.
Canon City, CO 81212

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X_ Yes  ___ No (*check one*).  Briefly explain:

Flores was the acting and directing Warden primarily responsible with the policy changes at Centennial Correctional Facility that deprived Plaintiff and similarly situated inmates of their court-ordered classes in order to be eligible for parole. The prioritization of the maximum-security inmates housed in the Management Control Comprehensive unit over other inmates' rights to access programming for potential release violated federal rights. Flores was employed by the State of Colorado acting under state and federal law at time of violations.

Defendant 2 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 3:  Jared Polis, Governor of State of Colorado
(Name, job title, and complete mailing address)

136 State Capital Building
Denver, CO 80203

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X__ Yes ___ No (*check one*).  Briefly explain:

Jared Polis is the elected Governor of State of Colorado, the boss of the CDOC, having issued a House Bill titled "Sunset Bill" 23-164; the failure to enforce the parameters of the legislators intent in the bill means that he willfully and maliciously allowed his bill to be falsely implemented in violation of significant numbers of inmates' rights. This means that he was acting under state and federal law at time of violations.

Defendant 3 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 4:  Philip J. Weiser, Attorney General of State of Colorado

(Name, job title, and complete mailing address)

Ralph L. Carr Judicial Center
1300 Broadway, 10ᵗʰ Floor
Denver, CO 80203

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X__ Yes ___ No (*check one*).  Briefly explain:

5

Philip J. Weiser, having been the elected Attorney General of the State of Colorado, gained knowledge of the tampering of DNA by Yvonne "Missy" Woods in over 652 cases, yet has made no intentional effort in overturning, retesting, or reexamining false evidence used to convict United States citizens in the State of Colorado. By ignoring his responsibilities, refusing to comment, and attempting to sweep the violations under his living room rug, he has entered into his own capacity and has violated significant number of inmates' rights under state and federal law.

Defendant 4 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 5:    Moses "Andre" Stancil, Executive Director of CDOC
(Name, job title, and complete mailing address)

CDOC Headquarters
1250 Academy Park Loop
Colorado Springs, CO 80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __X_ Yes ___ No (*check one*). Briefly explain:

Moses "Andre" Stancil was the employed executive director of the CDOC involved in implementing policy decisions and overseeing all prison operations. He was directly attributed and connected to Warden Flores decision to remove programming from Centennial Correctional Facility, and transfer those programs to Fremont County Correctional Facility. In addition to these violations, he is aware of significant developments over years of inmates' rights being violated under state law and federal law, and give rise to challenge his conduct in Federal Court.

Defendant 5 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 6:    Amanda Retting, SOTMP administrator, SOMB board
(Name, job title, and complete mailing address)

CDOC Headquarters
1250 Academy Park Loop
Colorado Springs, CO 80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

Amanda Retting is the employed supervisor within the CDOC involved in assigning inmates to treatment, directing policies regarding treatment and progression for parole eligibility. Retting has been given direct knowledge regarding Plaintiff Anderson's eligibility for parole, and has deliberately denied him reasonable access to programming, although he has been waiting a significant longer period than other inmates. As a result of these violations, she has given rise to challenge her conduct in Federal Court.

Defendant 6 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 7:    Kimberly Kline, SOMB board
(Name, job title, and complete mailing address)

CDOC Headquarters
1250 Academy Park Loop
Colorado Springs, CO 80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

As a member of the SOMB board, Kimberly Kline has had direct knowledge of Plaintiff Anderson's eligibility for parole. Over the years, Kline has taken no action to facility or expedites Plaintiff Anderson's release from custody, and has deliberately caused him to wait years without any feasible way to progress or work towards his eventual release. She has given rise to challenge her conduct in Federal Court.

Defendant 7 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 8:    Malebranche, Major of Centennial Programs
(Name, job title, and complete mailing address)

Centennial Correctional Facility
600 Evans Rd.
Canon City, CO 81212

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

Malebranche was the major of Centennial Programs employed by Warden Flores that deliberately withheld financial aid and college programming from Plaintiff Anderson. This resulted in nearly 19,500.00 dollars of financial award to be prevented from his person. Additionally, the 7,500.00 to 8,500.00 Federal Pell Grant was deprived from his person, causing injury to Plaintiff Anderson's person, giving rise to challenge her conduct in Federal Court.

Defendant 8 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 9:    Strawn, Captain of Prison Operations (Kitchen & Laundry)
(Name, job title, and complete mailing address)

Centennial Correctional Facility
600 Evans Rd.

Canon City, CO 81212

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X_ Yes ___ No (*check one*).  Briefly explain:

Captain Strawn was employed by the CDOC as the direct supervisor of the Laundry and Kitchen departments at Centennial Correctional Facility. This individual runs a skeleton kitchen where he requires inmates to do multiple positions in violation of their constitutional rights and in violation of posted operational rules. The excessive working involved causing inmates to burn their hands unloading an extremely hot dish machine and failed to provide protective equipment, in addition to back-breaking work. For these reasons, Strawn has entered into liability causing the ability to challenge his conduct in Federal Court.

Defendant 9 is being sued in his/her  __X_ individual and/or _X__ official capacity.

Defendant 10: Michael Rivera, Lieutenant of Kitchen Operations
(Name, job title, and complete mailing address)

Centennial Correctional Facility
600 Evans Rd.
Canon City, CO 81212

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X_ Yes ___ No (*check one*).  Briefly explain:

Michael Riviera is the Lieutenant of Kitchen Operations that works under Captain Strawn and is employed by the CDOC. This individual had repeatedly threatened and harassed Plaintiff Anderson's person to require him to work multiple positions in a single day. This resulted in violation of Plaintiff Anderson's human rights and amounts to modern-day slavery. For these violations, it allows Anderson to challenge his conduct for treating him and other similarly situated inmates in Federal Court.

Defendant 10 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 11: Steer, Lieutenant of Kitchen Operations
(Name, job title, and complete mailing address)

Centennial Correctional Facility
600 Evans Rd.
Canon City, CO 81212

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X__ Yes ___ No (*check one*).  Briefly explain:

Steer is a Lieutenant of Kitchen Operations that works under Captain Strawn and

is employed by the CDOC. This individual has repeatedly threatened and harassed Plaintiff Anderson's person and other similarly situated inmates to "work faster" and consistently yells at the inmates in an aggressive and inappropriate manner. For these violations, it allows Anderson to challenge his conduct in Federal Court.

Defendant 11 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 12:    Dr. Lakeisha Sharp, a parole board member for State of Colorado
(Name, job title, and complete mailing address)

CDOC Headquarters
1250 Academy Park Loop
Colorado Springs, CO 80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?    __X_ Yes ___ No (*check one*).  Briefly explain:

Dr. Lakeisha Sharp conducted Plaintiff Anderson's first parole hearing, in which she stated that "if everything Plaintiff Anderson has said is truthful to her questions, then it doesn't make sense to her, because the only thing that would make sense to her is that Plaintiff Anderson should not have been convicted and should not be in prison right now." The failure to provide her determination to the appropriate authorities and denying Plaintiff Anderson's parole while having this actual knowledge to her questions allows for Anderson to challenge her conduct in Federal Court.

Defendant 12 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 13:    Stephen Holmes, a parole board member for State of Colorado
(Name, job title, and complete mailing address)

CDOC Headquarters
1250 Academy Park Loop
Colorado Springs, CO 80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?    __X_ Yes ___ No (*check one*).  Briefly explain:

Stephen Holmes conducted Plaintiff Anderson's second parole hearing, in which he denied the parole with a one year set back.  This individual had actual knowledge of factual issues in Plaintiff Anderson's cases, and considered Mr. Anderson a perfect candidate for parole. While unilaterally denying him access to parole, stating that he was ineligible for parole due to the Colorado Department of Corrections denying him access to programming for nearly 8 consecutive years. As a result of this denial, and his failure to rectify this situation, this case becomes actionable federally against him for negligence.

Defendant 13 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 14: Core Civic, a private company that runs two private prisons, Crowley County and Bent County
(Name, job title, and complete mailing address)

Crowley County Correctional Facility
6564 St. Hwy 96
Olney Springs, CO 81062

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X_ Yes ___ No (*check one*).  Briefly explain:

Core Civic is a privately traded company that has a contractual relationship between their company and the CDOC meaning while acting under color of state and federal law, Core Civic becomes liable for failing to house the required treatment requirements for Plaintiff Anderson's person. All of the individuals employed by Core Civic represent Core Civic; therefore, for the accepting of Plaintiff Anderson without the capacity to parole him and for hosting a mock parole hearing, the company has become liable. For these violations, Anderson challenges their conduct in Federal Court.

Defendant 14 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 15: Colorado Bureau of Investigation, a criminal investigation laboratory employed by State of Colorado.
(Name, job title, and complete mailing address)

Office of the Director
690 Kipling Street, Suite 3000
Lakewood, CO 80215

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X_ Yes ___ No (*check one*).  Briefly explain:

The Colorado Bureau of Investigation was acting under color of state and federal law. They implemented a policy of clear disregard to Plaintiff Anderson's constitutional rights when they employed Yvonne Missy Woods for years while having actual knowledge of her deletion, omitting, and manipulation of DNA results. Due to the fact that they could have easily rectified this problem by removing Woods, the deliberate and malicious choice to retain her employment results in liability for their policy decisions. For these reasons, Plaintiff Anderson challenges their conduct in Federal Court.

10

Defendant 15 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 16:  Chris Schaefer, Director of the Colorado Bureau of Investigation.
(Name, job title, and complete mailing address)

Office of the Director
690 Kipling Street, Suite 3000
Lakewood, CO 80215

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X_ Yes ___ No (*check one*).  Briefly explain:

The Colorado Bureau of Investigation was acting under color of state and federal law. They implemented a policy of clear disregard to Plaintiff Anderson's constitutional rights when they employed Yvonne Missy Woods for years while having actual knowledge of her deletion, omitting, and manipulation of DNA results. As Chris Schaefer was acting Director of the Colorado Bureau of Investigation, who could could have easily rectified this problem by removing Woods, the deliberate and malicious choice to retain her employment results in liability for their policy decisions. For these reasons, Plaintiff Anderson challenges their conduct in Federal Court.

Defendant 16 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 17:  Stan Hilkey, as the Executive Director of the Colorado Bureau of Investigation.
(Name, job title, and complete mailing address)

Office of the Director
690 Kipling Street, Suite 3000
Lakewood, CO 80215

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X_ Yes ___ No (*check one*).  Briefly explain:

The Colorado Bureau of Investigation was acting under color of state and federal law. They implemented a policy of clear disregard to Plaintiff Anderson's constitutional rights when they employed Yvonne Missy Woods for years while having actual knowledge of her deletion, omitting, and manipulation of DNA results. Stan Hilkey was the acting Executive Director that could could have easily rectified this problem by removing Woods, the deliberate and malicious choice to retain her employment results in liability for their policy decisions. For these reasons, Plaintiff Anderson challenges their conduct in Federal Court.

Defendant 17 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 18:  City of Fort Collins
(Name, job title, and complete mailing address)

8th Judicial District
201 LaPorte Ave. Suite 200
Ft. Collins, CO 80521

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X__ Yes ___ No (*check one*).  Briefly explain:

The City of Fort Collins has acted under color of state and federal law. The City of Fort Collins has implemented policy decisions that are contradictory to other city departments. The City of Fort Collins has deliberately and maliciously suppressed the results of Yvonne Missy Woods in their criminal cases, and advocated the legality of her DNA test results. This policy has attempted to shift the liability to other entities, and for failing to take any substantial actions to resolve the liability question, the City of Fort Collins becomes that much more liable. For the challenged actions, Plaintiff Anderson challenges the City of Fort Collins actions in Federal Court.

Defendant 18 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 19:  Larimer County
(Name, job title, and complete mailing address)

8th Judicial District
201 LaPorte Ave. Suite 200
Ft. Collins, CO 80521

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X__ Yes ___ No (*check one*).  Briefly explain:

Larimer County has acted under color of state and federal law in the deprivation of Plaintiff Anderson's substantial constitutional rights. Larimer County has relied upon the false testimony of a habitual felon, numerous forms of perjury in trial, the DNA findings of a disgraced DNA scientist, tampering with a jury composition to remove a duly appointed CSU professor from her role on a jury, and offered forward a warrant that is direct violation of the Fourth Amendment and the Federal Constitutional protections. For these substantial frauds, the Larimer County has entered into liability for the negligence and deliberate indifference to Plaintiff Anderson's person, giving rise to challenging their conduct in Federal Court. Additionally, (CRITICALLY EMPHASIZED EMPHASIS APPLIED HERE): There are numerous outstanding motions that have been ignored by the District Court to include:
1.      "Motion for Procedural Default & Reconsideration of 35 (c) denial" in 16_CR_380.
2.      Newly Discovered, Trial Transcripts and Proof of Service,

3.    Petition for Post-conviction relief pursuant to CRIM. P. 35 (c), NEWLY DISCOVERED CLAIMS; TRIAL AUDIT AS TO SPECIFICITY."

4.    "Motion for Justifiable Excuse or Excusable Neglect; Amendment within 15 days."

These motions were lawfully filed within the three year collateral period or within the one year period allowed for newly discovered motions, and have never been appointed counsel, never been briefed on the merits, and have been refused to be addressed by Larimer County. These motions contain significant Constitutional violations of jury tampering and warrant tampering, that both justify immediate relief in Federal District Court. As well, these refusals to hear these lawfully filed motions amount to a clear disregard to Plaintiff Anderson's substantial constitutional rights, particularly his right to due process and equal protection of the law under the 14th amendment of the United States Constitution.

Defendant 19 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 20:  Gordon Mclaughlin, acting elected District Attorney for the 8th Judicial District (Name, job title, and complete mailing address)

8th Judicial District
201 LaPorte Ave. Suite 200
Ft. Collins, CO 80521

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (check one). Briefly explain:

Gordon Mclaughlin is the acting elected District Attorney acting under color of state and federal law. McLaughlin has taken no action to resolve the discrepancies in Plaintiff Anderson's case, has refused to meet with Plaintiff Anderson face to face, and has instructed his District Attorney's to cover up and conceal the violations in Plaintiff Anderson's constitutional challenges to jury tampering and illegal evidence acquired without a federally lawful warrant. For these actions, this individual has created policy decisions that are discriminatory and has entered into his own liability, particularly true when considering the lengthy delay of proceedings, which amounts to prosecutorial misconduct and negligence justifying federal relief. For these reasons, Plaintiff Anderson challenges his conduct in Federal Court.

Defendant 20 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 21: Matt Maillaro, the Assistant Deputy District Attorney in charge of resolving Yvonne Missy Woods misconduct for the 8th Judicial District.
(Name, job title, and complete mailing address)

8th Judicial District

201 LaPorte Ave. Suite 200
Ft. Collins, CO 80521

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

Matt Maillaro is the acting Assistant Deputy District Attorney that has actual knowledge of Plaintiff Anderson's innocence. In addition to his actual innocence, he has actual knowledge of the fact that the District Attorney's have failed to produce a lawful search warrant. THE PEOPLES EXHIBIT FOUR is a fraud, and does not constitutionally authorize a search seven months prior. In addition to these violations, Maillaro has active knowledge of significant jury tampering in Plaintiff Anderson's case to include the certifying of an incomplete verdict of conviction due to the alternate juror Donna Jo Hope taking the place of duly appointed juror member CSU facility professor ANNE AVERY. This actual knowledge of a 7th peremptory strike not authorized by law allows for more federal cause of action to pursue this case in the Federal District court. Maillaro was acting under color of state and federal law, and has taken no action to resolve the glaring violations in Plaintiff Anderson's case. The 8th Judicial District Attorney's have attempted to cover up and conceal the violations in Plaintiff Anderson's constitutional challenges to jury tampering and illegal evidence acquired without a federally lawful warrant. For these actions, this individual has enforced policy decisions that are discriminatory and has entered into his own liability, particularly true when considering the lengthy delay of proceedings. For these reasons, Plaintiff Anderson challenges his conduct in Federal Court.

Defendant 21 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 22:  State of Colorado, had arbitrarily denying Plaintiff Anderson access to all of his "lawfully filed, and legal" chess pieces to be used on the board. There were numerous motions filed within the Colorado Appellate Court that the panel disregarded the legality.

8th Judicial District
201 LaPorte Ave. Suite 200
Ft. Collins, CO 80521

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

In 16_CR_380, Plaintiff Anderson filed legal motions to preserve claims for Federal District Court review. Plaintiff Anderson filed a Notice of Appeal, Appendix A, B, C, D, Designation of Record, Supplemental Motion, and a CAR 15 day Rehearing motion, that were all ignored by the Appellate Court. Plaintiff Anderson intends to challenge the constitutionality of the rule to bar pro se motions while counsel is filing motions. This is unconstitutional as it prevents Plaintiff Anderson the ability to assist in his appeal, and unilaterally forecloses and

bars access to the court to properly filing litigant's claims. It is constitutional to make your claims plain for the reviewing court, and a courts decision to circumvent motions that justify relief by simply stating that a defendant must fire his counsel before the court may rule on any constitutional claims raised in a motion is clearly unconstitutional. This means that plaintiff Anderson must forego his right to have counsel assist him, in order to have any access to the court. These violates were prior sent in a letter to Federal court notifying the 10th District, the abuse or denial of access to Plaintiff Anderson's constitutional claims being raised.

In addition, the State of Colorado has certified a warrant that is a fraud, meaning it was filed a day after an indictment, and seven months after a search had already occurred. The State of Colorado has authorized the false perjured testimony of a habitual felon while knowing that the testimony was false through the State's appointed representatives, who all collectively knew the testimony is false. This violated each counsel's oath of candor and office. Furthermore, the state has direct knowledge of the jury tampering that occurred in Plaintiff Anderson's case that allowed a prejudiced partial juror, a crime victim who never received justice, to arbitrate the facts of his case, while having actual knowledge that this juror was an alternate, and had been randomly selected to be removed at the end of the trial. The replacing of duly appointed Juror, CSU professor Anne Avery with Donna Jo Hope, without permission of law or counsels deprived Plaintiff Anderson of a fair and impartial jury trial.

These violations are glaring and justify a federal cause of action to investigate whether or not constitutional violations occurred, and whether or not the State of Colorado and it's entities are complicit in the frauds.

And finally, Plaintiff Anderson challenges the constitutionality of 44.1 Warrant Law, as original warrant stated a "No Search clause" by Honorable Judge Michelle BRINEGAR, yet law enforcement were still able to search Plaintiff Anderson even though the legislator states that there must be two warrants at the time of arrest, and that such a warrant less search violates the fourth amendment of the U.S. Constitution. Therefore a 44.1 is unconstitutional when it allows an invasive search without the necessity of first acquiring a lawfully issued warrant by a magistrate. For these substantial grounds, amounts to more federal cause of action to pursue litigation in these Honorable Courts.

Defendant 22 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 23:   Gui Bosch is the head Warden for the Crowley County Correctional Facility. (Name, job title, and complete mailing address)

C.C.C.F.
6564 St. Hwy. 96
Olney Springs, CO 81062

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes  ___ No (*check one*).  Briefly explain:

Gui Bosch is the current Warden in charge of housing Plaintiff Anderson while he is unconstitutionally convicted in violation of both State and Federal Constitutions. The detaining mittimis is unconstitutional as the verdict was signed by only 11 of the 12 jury members requiring to sign the verdict form. The missing verdict signature means that Mr. Anderson is not constitutionally convicted, speedy trial applies as well as double jeopardy. The choice to continue to incarcerate Mr. Anderson with clear knowledge of violations that justify his immediate release amounts to additional negligence. It amounts to further negligence when considering that the facility has no capacity to parole Mr. Anderson, or provide him with the requisite parole programming needs to expedite his release. Due to being treated differently than a similarly situated inmate, it appears that the cause of action is further justified to seek relief in federal district court for violations of the federal constitution and federal rights in question herein.

Defendant 23 is being sued in his/her __X_ individual and/or _X__ official capacity.

Defendant 24:   Colorado Department of Corrections, is the employer of numerous defendants. (Name, job title, and complete mailing address)

CDOC Headquarters
1250 Academy Park Loop
Colorado Springs, CO 80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

Colorado Department of Corrections was acting under color of state law, when policy decisions were made by Warden Flores and Executive Director Stancil. In addition, the employees at the Centennial Correctional Facility justify federal cause of action. As well as the continuing to house Plaintiff Anderson on a de facto lifetime sentence with no immediate prospect for release, and has intentionally delayed, and denied Plaintiff Anderson reasonable access to programming to progress through his court ordered sentence. For these reasons, the Colorado Department of Corrections has given rise to a federal cause of action to justify constitutional violations against Plaintiff Anderson's person.

Defendant 24 is being sued in his/her __X_ individual and/or _X__ official capacity.

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

_X_    State/Local Official (42 U.S.C. § 1983)

___    Federal Official
        As to the federal official, are you seeking?

16

___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)

___ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

__X_    Other: (*please identify*)  **The Due Process and Equal Protection clauses of the 14th Amendment of the United States Constitution.**

**The particularity clause as it applies to warrants and unlawful searches and seizures under the 4th Amendment of the United States Constitution.**

**The constitutional protections against false confessions and perjured testimony, particularly as it applies to a Habitual Felons "made-up, self-serving" confession. Whether such statements can justify a conviction, or does perjury violate the protections of a fair and impartial jury trial.**

**The constitutional requirement of an impartial panel, not a partial juror determining guilt.**

**The constitutional ramification of all of Plaintiff Anderson's convictions based upon evidence either examined by disgraced Woods, tested by Woods, omitted by Woods, manipulated by Woods, or expert testimony by Woods, amounts to a travesty of justice and the verdict has been acquired by unconstitutional means.**

**The constitutional question regarding 44.1 warrant law, whether or not police may search a defendant and profit from search when explicitly forbidden by legislature statute, Judge's 44.1 warrant, and if a search did occur, whether or not this is illegal conduct.**

**The liberty interest in receiving equal access to state ordered treatment in order to be released from custody.**

**The procedural defaulted arguments used to validate the conviction against Plaintiff Anderson was based upon unconstitutional arguments as the People had procedurally defaulted on their briefing deadline, and Plaintiff Anderson had moved for procedural default in his 14 day post trial motion as is required by law.**

**The People have further procedurally defaulted in the current proceedings against him, yet have been allowed to file additional briefing in violation of the Due Process standards amounting to additional delay. The excessive day of nearly 1,800 days when relief was warranted also amounts to a constitutional violation that justifies relief in Federal Court.**

**In addition to these claims, Plaintiff Anderson raises argument for a Cause of Action due to being "Actually Innocent" and raises argument for 3,480 days of False or Wrongful Confinement. The convictions were acquired in violation of the CO and US Constitution as perjured false testimony was used by a habitual felon, a jury composition was tampered with by the District Attorney's, an indictment was issued without a lawful search warrant, followed by PEOPLES EXHIBIT FOUR which was a warrant filed the following day after the indictment to justify a search conducted seven months in the past. This means that inadmissible evidence was used to convict a United States Citizen in direct violation of his substantial constitutional protections and rights under the United States Constitution.**

**Plaintiff Anderson's claims for damages are over 75,000.00, as he has requested $33,095,812.67 in damages, raised against all defendants individually and collectively regardless of any defendants being removed from the suit. This large monetary damages sought allows for a federal cause of action.**

**Furthermore, it appears apparent that the violations are deliberate and malicious and continuing to accrue, with no relief in sight, except by the exceptional vision and constitutional expertise of this Honorable Court, who has now been called to instruct the lower courts.**

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

**CLAIM ONE: Violation of Due Process and Protected Liberty Interest in Unjustified Denial of Progression of Court-Ordered Treatment**

Claim one is asserted against these Defendant(s):

Supporting facts:

Plaintiff Anderson was deprived access to SOTMP treatment in violation of his due process rights afforded to him by the Colorado Constitution and United States Constitution. This violated Defendant Anderson's substantial rights to equal opportunity to parole and caused irreparable harm to both him and his family. This **intentional infliction of duress** caused actual psychological suffering and ongoing harm to Plaintiff Anderson, his immediate family members and has deprived his daughter from access to a supportive father figure in her life.

The actions of the State are inherently unjustifiable. According to the sentence Plaintiff Anderson received in Court, he became eligible for treatment immediately upon his transfer to the Colorado Department of Corrections in 2017. The state of Colorado violated Plaintiff Anderson's due process and liberty interest rights when they failed to progress or treat him reasonably even despite exceptional conduct on his part in years 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024, and 2025. *This claim is specifically raised to challenge the due process violations in each individual year to include the lack of due process hearings in each individual year to update Plaintiff Anderson on his eligibility for treatment.* The denial of treatment in each subsequent year has exacerbate increased the damages upon Plaintiff Anderson's person.

This motion becomes even more actionable when considering that over that entire time period; the Department of Corrections from 2019-2023; had listed Plaintiff Anderson as required to serve a 23 year 9 month sentence in violation of the 16 year 0 month governing sentence in all of Plaintiff Anderson's combined cases. By repeatedly calculating Plaintiff Anderson's parole eligibility wrong; the Department of Corrections became liable as they repeatedly listed Plaintiff Anderson as

ineligible for treatment due to their miscalculations. This violation was easily remedied had they replied to Plaintiff Anderson's reasonable request to fix the time computation error he discovered in 2019. The failure to fix the time computation in 2019, 2020, 2021, 2022, and 2023 resulted in increased due process, equal protection and liberty interest violations. The Department of Corrections had virtually turned Plaintiff Anderson's sentence from one that requires treatment to return to society to be a contributing member of society to a sentence of life without the possibility of parole. To be specific for this Honorable Court, the Colorado Department of Corrections listed in Plaintiff Anderson's file of 7 parole "overrides", failed to submit Plaintiff Anderson to community corrections per their own policy (*DOC AR #550-01 IV. C. 2b*) in February to March of 2023, and 2024, and their choice to fix Defendant Anderson's parole calculations 30 days before a parole hearing were all collectively unreasonable and disregarding of Plaintiff Anderson's substantial constitutional rights under the Due Process Clause.

Specifically, this means that the Colorado Department of Corrections had calculated his time for parole eligibility of October 2027 wrong, and then used that calculation error to justify their denial of reasonable and timely treatment, in furtherance of their clear disregard for the due process violations that occurred.

Additionally, it is important for the Court to note that while Plaintiff Anderson was housed at Arkansas Valley Correctional Facility, the facility and the state provided Plaintiff Anderson with no access to treatment even though they had a treatment program and he is listed as a low-risk non-violent sex offender. The state of Colorado has chosen to give preferential treatment to long-time offenders and sexually violent predators that have a predilection of recidivistic behavioral traits, while rudimentily denying access to less violent, and more rehabilitated offenders. This is a clear disregard of Plaintiff Anderson's rights while he was housed at Arkansas Valley Correctional Facility, and Centennial Correctional Facility between 2017-2023.

The State of Colorado will claim erroneously that they provided a treatment opportunity in 2022; which Plaintiff Anderson denied. This was not a true denial; as Defendant Anderson sent a letter detailing his questions about the program and what was required. Defendant Anderson received no answer or due process hearing to his requests.

After being contacted by a victim in 2023; Plaintiff Anderson promptly notified SOTMP and case manager MELENDEZ as is required by law. In response to his honorable choice, the CDOC chose to punitively punish Plaintiff Anderson by threatening to take or revoke all of his earned good time for good behavior if he refused to comply with a transfer to a non-court ordered intensive therapeutic community for high risk offenders. In complete humility, Plaintiff Anderson laid aside

his pride and chose to comply with the request of the State of Colorado. This action of the State was unjustified as it transferred Plaintiff Anderson from a progressive incentive unit earned for good behavior to a maximum-security level five facility. There was no due process hearing to address the deprivations of Plaintiff Anderson's status, and this choice irreparably harmed Plaintiff Anderson. *The transfer occurred on June 12th, 2023.*

During the window of June 12th, 2023; the state of Colorado and CDOC showed a clear disregard to the due process rights of Plaintiff Anderson. While housed at Centennial Correctional Facility, the defendants collectively and individually deprived dozens of inmate's reasonable access to a program they had moved the defendants into. Specifically, it should be reasonably noted that the CDOC had created a new category called "Pre-Treatment" while still taking funds for all 96 inmates housed in the program while only treating half of the offenders present. The CDOC claimed that the inability to timely provide treatment was due to staff retention problems; and therefore, it is the inmates who have to languish in prison for excessive periods of time rather than fix the issue. The state of Colorado's actions become even more actionable when considering that the CDOC refused to implement Governor Polis's directives within the "Sunset Bill" or HB 23-164.

While housed at Centennial, the CDOC ran by warden Ryan Flores and executive director Moses "Andre" Stancil made a conscious choice to prioritize the security ramifications of the most violent inmates in the state of the Management Control Comprehensive unit from Sterling Administrative Segregation being moved to Centennial while creating a policy shift by Flores and Stancil that virtually shut down the SOTMP program completely in November 2023. This change in policy violated several inmates' status in the program to include Plaintiff Anderson who was removed without a "termination" hearing in violation of the Due Process clause. Was it reasonable to remove defendants from treatment, fail to provide them their treatment contracts, and move a program to an entirely different facility without addressing Court ordered treatment? The answer should be conclusively no, and any other answer would be highly suspect and irresponsible; especially considering the fraud that was committed by the defendants, when they collectively received state funding for inmates that they did not treat.

The state of Colorado has also created this case to be even more actionable under federal law when considering they have completely disregarded state ordered mittimis directives from state appointed judges and rather implemented their own interpretation of laws, determining who they believe should be or should not be eligible for release. In many cases, the CDOC has prioritized non-essential parole tasks over essential parole tasks such as excessive back-breaking kitchen labor over required educational, spiritual or parole required classes.

Plaintiff Anderson's prison sentence was unnecessarily extended exponentially by CDOC miscalculation, Due Process violations, and failure to conduct reasonable parole hearing preparation. The CDOC parole board denied Plaintiff Anderson's parole by Dr. Lakeisha Sharp after listing Plaintiff Anderson as having been convicted under a completely different statute than he was actually convicted of, of "submission" which was not an element charged against Plaintiff Anderson. This action was unreasonable to take Plaintiff Anderson to parole with the wrong charge. The clear disregard to Plaintiff Anderson's substantial liberty interests are further heightened when considering the parole action sheet lists the requirement of Plaintiff Anderson to complete Victim's Impact in 2023, while completely disregarding the fact that he had already completed Victim's Impact in 2022. Was it reasonable to allow an inmate to proceed to a parole hearing with a new case manager appointed less than thirty days ago, with no progression and no forms being filled out? The State of Colorado has implemented a clear disregard for Defendant Anderson's substantial due process and liberty interest rights when they have allowed him to go to parole without even submitting a parole plan in advance. This behavior is inherently unconstitutional and in direct violation of federal law. These actions have also caused irreparable damage in the form of the **infliction of intentional emotional duress or distress** and extended incarceration.

The direct supervisors of the program are Amanda Retting and Kimberly Kline. Both of these individuals had active knowledge of the violations occurring against Plaintiff Anderson's person for a long period of time, yet neither took action to resolve the constitutional violations. It appears apparent that Susan Walker, had contacted Amanda Retting regarding the violations to Plaintiff Anderson's person, and Retting took no action. This unilateral denial of progression against Plaintiff Anderson's person has caused irreparable harm. The conduct was unconstitutional and egregious. As a result of their action, it appears apparent that Plaintiff Anderson's substantial protections under the Colorado and Federal Constitutions were violated without remedy, and the only remedy is filing for Federal redress in this respective court.

**CLAIM TWO: Violation of Slave Labor Act, State Officials requiring inmates to work multiple positions in direct violation of their substantial rights.**

Defendants Lieutenant Rivera, Lieutenant Steer, Captain Strawn have chosen deliberately to violate the substantial human rights of inmates under their care at Centennial Correctional Facility. To quote Lt. Rivera, "Offender Anderson was briefed in his Food Service workers orientation that,

due to not having enough workers in the facility, that offenders do not get assigned positions and that he would have to work multiple areas throughout his shift."

The Centennial Correctional Facility is a level – five maximum security facilities. This means that 90 percent of the facility is ineligible to work due to threat assessments or institutional behavioral issues. As a result, one of the largest CDOC kitchens is run on a "skeleton" crew. This is unreasonable and violating of the inmate's rights to equal protection of the law and not to be physically worked to the point of exhaustion. The current challenges under the Slave Labor Act apply nowhere more bluntly or obviously than the Centennial Correctional facility.

Plaintiff Anderson was required to do 2-3 inmates positions each shift, five days a week, for 202 days. Plaintiff Anderson attended every shift without missing a single days worth of work. This included having to cook the food, serve the food, wash the dishes, and wash the pots and pans. Most of CDOC kitchens are run with 7-8 cooks. Plaintiff Anderson was at one point in time required to cook all of the food by himself. The serving of the food followed by washing the dishes left Plaintiff Anderson no reasonable time to take a break. When requested to take a break, staff would threaten and harass Plaintiff Anderson with write-ups for failing to be "perfect", this was entirely unreasonable and violating of Plaintiff Anderson's substantial constitutional rights.

After repeatedly reporting symptoms that were problematic and being caused due to sleep deprivation and being over worked; Defendant's Strawn, Rivera, and Steer deployed malicious policies and actions towards me. This resulted in mental and physical distress, and emotional trauma.

To further the violations, Defendant's Strawn, Rivera and Steer deliberately chose to work me on my holy days of the Sabbath (Saturday) and holy days of (Sunday); as I am listed as Lutheran within my file.

Over the past seven years, every denomination has been able to attend and receive religious services except me. I have not been able to be visited or taught by a Lutheran priest the entire time I am incarcerated, and my time to commune with God was deliberately violated by the Defendant's when their behavior shown conclusively that they are working the inmates excessively as slaves.

The excessive work load prevented me from reasonable access to telephones in the 30-45 days leading up to my Grandpa Marlow's death. This was *deliberate infliction of emotional duress* as the Centennial Correctional Facility had chosen to change a treatment program into a "Closed-Custody Transition Unit (C.C.T.U.), which I have never been closed custody, or never required any classes to transition back to general population facilities.

On 02/08/2024; Defendant's Rivera and Captain Strawn further violated my rights by retaliatory firing me. They retaliatory fired me deliberately to prevent me access to incentive living

program that I had already qualified for years at Arkansas Valley Correctional Facility and for challenging their deliberate failure to enforce and practice actual CDOC Headquarter Kitchen policy that applies to all State-Operated facility kitchens. This amounts to deliberate indifference, emotional trauma, emotional anguish and psychological mental trauma.

**CLAIM THREE: Violation of Due Process, Punitive-restrictive punishment in violation of Due Process and Equal Protection, & Deliberate Indifference in terms of depriving Plaintiff Anderson reasonable ability to continue post-educational pursuits.**

Plaintiff Anderson was punitively punished without justification. Plaintiff Anderson was moved from Arkansas Valley Correctional Facility – incentive pod to Centennial Correctional Facility Super-max. This resulted in over $1200.00 of personal property to be deemed contraband. This included an expensive play station 4, 2 controllers, six games, gaming headset. These items were awarded to Plaintiff Anderson for exceptional behavior over a long-period of time and were deprived without cause. This was a form of radical acceptance and a way to help treat his mental health issues. The deprivation without justification was violating of his rights to be equally treated as other inmates. Additionally, Plaintiff Anderson had earned the ability to paint canvases in his cell with expensive acrylic paints and brushes. The CDOC determined approximately $200.00 of art supplies as contraband, and further deprived him of access to materials that help him cope with his incarceration. This was deliberate indifference and violated Defendant Anderson's substantial rights.

Apparently in Plaintiff Anderson's case, this is not the case. Plaintiff Anderson was removed from the incentive unit without cause. On 05/25/2024; the CODOC gave Plaintiff Anderson a CDOC college email and enrolled him for FAFSA through Major Arnolds where he qualified for $7,395.00 Federal Pell Grant to continue or finish my Bachelor's in Business Administration.

The CDOC further shown extreme deliberate indifference to Plaintiff Anderson when they refused repeatedly to award 30 days Good Time under AR 550-12B for earning an Associates Degree while incarcerated and preventing access to educational pursuits to earn a Bachelor's Degree. Plaintiff Anderson was #1 on the Second Chance Pell list that he qualified for in May 2023, and the choice to move him resulted in violations of due process and equal protection of the law as he was punitively punished without proper hearing.

The CDOC was further violating of Plaintiff Anderson's rights when in 2019, 2020, 2021, 2022, 2023 and 2024; no CDOC official made any concerted effort to assist Plaintiff Anderson in finishing his Bachelor's Degree. This means that Plaintiff Anderson was deliberately treated

differently than similarly situated inmates.

Nothing proves these violations more than the actions of Defendant Malebranche. Major Malebranche repeatedly denied Plaintiff Anderson reasonable access to continue his education while incarcerated at Centennial. This included the false assertion that all classes would have to be paid for out of pocket even despite Plaintiff Anderson already qualifying for Federal Pell Grant of $7,395.00, and Direct Loan of $12,500.00 on May 25th, 2023. As well, Plaintiff Anderson had received an *"Unconditional Admission"* on 09/15/2023 at 10:49 a.m., to Adams State University Prison Education Program for fall 2023, having been admitted to the *Bachelor of Arts – Business Administration* correspondence degree program.

It is unreasonable and unconstitutional for the State of Colorado to deny access to post-educational degrees, especially considering the fact that Plaintiff Anderson was the only inmate accepted with an "unconditional acceptance" to the *Bachelor of Arts in Business Administration* program at Adam's State University in 09/2023. The CDOC should be deemed liable for these actions from 2019-2024, as it is evident and easily discoverable in the A.S.U.'s educational correspondence file the amount of letters sent to and received by Mr. Anderson to the University. While at Centennial, it appears apparent that Major Malebranche seized a significant amount of mail, intercepting it before it reached Plaintiff Anderson. This included an A.S.U. Student ID, course registration forms, packets detailing degrees, and pamphlets. These actions are clearly malicious and depriving of Plaintiff Anderson's constitutional right to be allowed to continue his education while incarcerated.

**CLAIM FOUR: Violation of the Due Process, Punitive move to private prison Core Civic, a facility already prior refused by Plaintiff Anderson in 2017 at both Crowley and Bent County, shows a clear disregard to the constitutional rights of Plaintiff Anderson.**

Core Civic becomes liable in the accepting of plaintiff Anderson. This facility had already been refused by Plaintiff Anderson and his placement there is ineligible. The choice to house Plaintiff Anderson in a particularly violent facility without facilitating his parole needs shows a clear disregard for his constitutional rights. This choice is actionable as Core Civic is a private company that is traded with public stock holders and not eligible for immunity.

This choice is further violating when considering that Crowley County Correctional Facility is unable to provide Plaintiff Anderson any reasonable ability to pursue his educational or parole required classes. The facility is notorious for ostracizing sex offenders and putting inmates in particularly dangerous situations.

While housed at Crowley County Correctional Facility from 07/01/2024 to current date, Plaintiff Anderson has witnessed inmates allowed to enter other units and other pods to jump inmates, individuals being extorted, violent acts resulting in blood splatter all over the floor of the building, and more. It is clear by the policies and actions of the Core Civic staff, that the Core Civic staff have no intention in fixing any of the issues that present particularly dangerous situations for inmates. The inability to process the inmates in a timely and orderly fashion to include state ordered controlled movement increases the likelihood of dangerous situations for inmates occurring. This violates Plaintiff Anderson's substantial federal constitutional rights and amounts to a malicious retaliatory action by both the CDOC and the Core Civic in moving Plaintiff Anderson to a private facility.

The parole hearing conducted at Core Civic increases the penalty for negligence and deliberate indifference when considering Core Civic has no program to facilitate SOTMP, or no ability to parole Plaintiff Anderson. This means that the company Core Civic has failed to facilitate a state-ordered requirement of individuals' paroles and by accepting certain individuals, increases their likelihood to suffer irreparable harms and decreases their likelihood of progressing back to society. This violates Plaintiff Anderson's substantial due process rights, equal protection rights, and liberty interest rights. However, particular emphasis is given to this civil rights complaint when considering that Plaintiff Anderson should not even be housed at Core Civic after being accepted to a program that was shut down by an official policy decision. This allows this action to be pursued on both an individual and an official capacity to fix the constitutional deprivations, federal law errors, and to cure the defects present.

**CLAIM FIVE: Violation of Due Process, Equal Protection and Deliberate Indifference to the development of Colorado Bureau of Investigation analyst Yvonne "Missy" Woods fabrication, omitting DNA results in 652 inmate cases from 2008 till 2023, first half of her career.**

Plaintiff Anderson amounts to 2 of the 652 inmate cases arising from the issues from Yvonne "Missy" Woods fabrication and omitting of DNA results.

In May 2023, Plaintiff Anderson challenged Yvonne Missy Woods DNA findings in a newly discovered petition, specifically stating that she lied about YSTR findings in a mixed DNA source, in a deliberate effort to mislead the jury and maliciously deprive Plaintiff Anderson of his freedom or liberty. The State of Colorado has attempted to the best of their ability to avoid these claims, and violate Plaintiff Anderson's due process rights to access to the courts claiming that the motion must have come through counsel. This is an incorrect standard, as the motion is a supplement and has been

filed with the required documentation, supplementary motions, and forms to formally raise arguments under collateral review.

On March, 11th, 2024; an article by CNN was posted called *"Colorado Bureau of Investigation finds DNA scientist manipulated data in hundreds of cases over decades,"* written by Emma Tucker, Andi Babineau, Andy Rose, and Holly Yan. The article mentions a statement from Ryan Brackley regarding Yvonne "Missy" Woods as follows: *"she's never created or reported any false inculpatory DNA matches or exclusions, nor has she testified falsely in any hearing or trial resulting in a false conviction or unjust imprisonment."* Plaintiff Anderson challenges the validity of this statement and brings the instant action civil rights lawsuit against Yvonne "Missy" Woods for violating his constitutional rights. Plaintiff Anderson raises argument to his case having a false interpretation or DNA explanation for mixed DNA, suppressed DNA or omitted DNA and that she testified falsely in his hearings and trials that did indeed result in a false conviction and an unjust imprisonment.

Yvonne "Missy" Woods was indicted on Tuesday, January 21st, 2025 in Jefferson Count Court with 102 Felony charges. According to the Denver Post, "Woods was charged Tuesday with 102 felony counts in connection with **longstanding** and **widespread** manipulation, deletion and alteration of DNA testing data during her 29-year career with the C.B.I. She is accused of criminally altering data in at least 58 cases, and is charged with 52 counts of forgery of a government-issued document, 48 counts of attempting to influence a public servant, a single count of perjury and a single count of committing a cyber-crime." "The most serious charge is the cybercrime count, which alleges she altered, damaged, or interrupted data in a computer system in such a way as to cause more than $1 million in damages. That charge is a class 2 felony, which typically carries between eight and 24 years in prison." "Woods retired from the C.B.I. In lieu of termination in late 2023 after the agency discovered **widespread** problems in her work. She **deleted, omitted or manipulated** DNA data in at least **1,003 criminal cases** during her 29-year career, the C.B.I., found in an internal investigation." "The C.B.I., allowed Woods to stay on the job **despite repeated concerns about the quality and reliability of her work over at least a decade,** and failed to seriously investigate several warnings about her professional conduct, the internal affairs report found. She had a **reputation among her colleagues for cutting corners** in order to be a high producer in the agency, yet was trusted with the C.B.I.'s most high-profile cases. "The data manipulation has sent shock waves through Colorado's criminal justice system. Prosecutors can no longer rely on her work, and defense attorneys worry that defendants were wrongly convicted based on falsified evidence."

For each day that Plaintiff Anderson remains incarcerated pending relief while the State of

Colorado has already identified significant constitutional issues with Yvonne "Missy" Woods expert testimony amounts to a deliberate delay by the state of Colorado and a deprivation of Plaintiff Anderson's substantial constitutional rights, particularly his due process right, equal protection right, and liberty rights under both the state of Colorado Constitution and the federal United States Constitution.

The unnecessary delay also results in grounds to pursue federal litigation in a civil rights complaint. As the State of Colorado has determined errors in Yvonne "Missy" Woods work product for several months, if not years, that Plaintiff Anderson continues to sit in prison for a false incarceration. Each of the delays brought against Plaintiff Anderson's person amounts to additional constitutional violations, justifying relief in this prisoner complaint filed in the 10th District for the State of Colorado.

As a result of these violations, the City of Fort Collins, Larimer County, the Colorado Bureau of Investigation, and District Attorney McLaughlin have become liable, in addition to the personal liability of Yvonne Missy Woods herself. Unnecessarily long delays that prohibit the interests of justice or circumvent relief cause the question of liability to arise, as there has been no concerted effort by any of these entities to rectify the damage caused by Yvonne Missy Woods to Plaintiff Anderson's person and his substantial constitutional rights. Was it reasonable to suppress the results, withhold discovery, tamper with court proceedings, and allow Plaintiff Anderson to remain incarcerated indefinitely while each had reasonable grounds to suspect that his conviction was invalid and acquired in violation of the state and federal constitutions?

The additional misconduct raises liability and negligence against Chris Schaefer and Stan Hilkey as both were Director and Executive Director of the Colorado Bureau of Investigation laboratory respectively. According to the Denver Post, and Internal Affairs report, it appears that the laboratory has received numerous reports by colleagues of Yvonne Missy Woods to the constitutional violations occurring in the laboratory. The article states that there was a pattern of abuse occurring over at least a decade. During that decade of time, the Directors took no action to resolve the issues until far after the violations having already occurred. The defamation of character, the deprivation of Plaintiff Anderson's person from his respective family, had already occurred as a direct result of the malicious conduct of Yvonne Missy Woods in her role of tampering, concealing, manipulating DNA results.

**CLAIM SIX: Violation of Due Process, Equal Protection and Deliberate Indifference to the substantial Liberty Interests of Mr. Anderson's person due to excessive delays, and the State relying on Procedurally-defaulted arguments.**

Plaintiff Anderson's person was incarcerated for 3,453 days of false incarceration prior to evidentiary hearing #2. This amounts to 82,872 hours of separation from family and loved ones.

Plaintiff Anderson filed a lawful collateral attack to his underlying conviction 1,797 days prior to January 30th, 2025 hearing date. The People procedurally defaulted in 16_CR_380 on July 8th, 2022 having missed their filing deadline by two days. Mr. Anderson moved for default and no court ruled on his post judgment motion filed within 14 days of summary denial. This action was unconstitutional, as well as using procedurally-defaulted arguments to sustain a conviction was unconstitutional.

The People further defaulted on December 30th, 2022 failing to file an Answer brief to Mr. Anderson's Supplement brief. There was 338 default days before the Court issued the December 3rd, 2023 default order. The people were 486 days in default before Evidentiary hearing #1; and now are 763 days in default before Evidentiary hearing #2. At both hearings, the city of Fort Collins and Larimer County have prevented plaintiff Anderson from reasonable ability to proceed to develop his claims under state law. This was unconstitutional. Furthermore, this federal civil rights lawsuit becomes even more actionable when considering that numerous state judicial officials have prevented Anderson with reasonable access under the Due Process Clause to the court systems. Numerous motions have been filed and circumvented by either judicial officials or by the court rules. The refusal to hear arguments lawfully rose during collateral three-year proceedings, refusal to allow supplemental motions lawfully filed, and refusal to reach a decision on the merits of a lawful rehearing motion filed in the Court of Appeals was unconstitutional. Plaintiff Anderson challenges the unilateral action by the State of Colorado to deny him access to the Court system to develop the record to his arguments.

The District Court allowed for new counsel to supplement the proceedings and allowed the District Attorney's to file an answer brief in response. The District Attorney's have waived their right to file any answer brief when they defaulted on December 30th, 2022. The current date is February 8th, 2025; and the unnecessary delay is in violation of the State of Colorado's constitution, in violation to the federal United States constitution.

As a result of these glaring violations, the City of Fort Collins, Larimer County, the Colorado Bureau of Investigation, and District Attorney McLaughlin have become liable. Unnecessarily long delays are inappropriate as they cause the Courts to become backlogged by other individuals' incompetence and negligence. A judge's time is valuable and should not be unnecessarily wasted by any entity. The failure to timely respond to motions, the defaulting on their ability to respond, and

filing defaulted briefs all amount to contempt of the court and negligence. Not only are these actions unethical but more importantly they are unconstitutional. The Due Process clause of the state and federal constitutions requires reasonable access to the courts to timely and efficiently present claims for the preservation of constitutional rights. When the City of Fort Collins, Larimer County, the Colorado Bureau of Investigation, and District Attorney McLaughlin or his employed Assistant Deputy District Attorneys delays the proceedings, those actions are "sanction-able." For each day of default, each responsible party is eligible for a fine. In this case, that amounts to 338 fines for default 1; with increased amounts of fines to 486 days in default 2, with even more increased amount of fines to 763 days in default 3, with exponentially increasing damages for default 4. Considering the fact that the City of Fort Collins, Larimer County, the Colorado Bureau of Investigation, and District Attorney McLaughlin have extended proceedings again for another 120 days, that amounts to approximately 886 days in default. **This is certainly not the Honorable Judge Jouard's fault.** However, if I was the Judge in the present actionable case, there is no doubt that I would have imposed fines against all relevant parties for wasting my time. *If there would be consequences to wasting my time, there should be consequences for wasting any Judge's time. Not only is the behavior unethical and unbecoming to the standard of an attorney, but it is just plain disrespectful.*

**CLAIM SEVEN: The issuance of PEOPLES EXHIBIT FOUR amounts to an unconstitutional interpretation of the Fourth Amendment of the United States Constitution. A warrant issued lawful, although it was issued a day after the indictment was announced, and is violation of the constitutional protections against illegal and unconstitutional searches and seizures. In addition, Plaintiff Anderson challenges the constitutionality of the 44.1 non-testimonial identification warrant law, specifically that if the law prohibits searches and requires a search warrant, that the law enforcement may not profit from a search and have detained his person wrongly in violation of the Colorado Constitution and Federal Constitution.**

The 44.1 non-testimonial warrant was unconstitutional, as the legislature specifically required this warrant law to deny violations of the Fourth Amendment of the U.S. Constitution. When the Honorable Judge Michelle BRINEGAR issued a warrant that explicitly forbid the search of Chayce Aaron Anderson with an explicit sub-court order #7 no search clause, and law enforcement chose to search him regardless of the court orders, the searches become inherently unconstitutional. When the 44.1 warrant law is allowed to indiscriminately search defendants, the law becomes unconstitutional as it is in direct contradiction of the protections of the Fourth Amendment of the United States. Specifically; *44.1 (f) (5): "No search of the person who is to give no testimonial identification may be made except a protective search for weapons, **unless a separate search warrant has been issued."***

The People have presented an exhibit titled, "PEOPLES EXHIBIT FOUR" that they claim justifies a search conducted seven months prior. This is constitutionally invalid and violates both the protections within the Colorado and United States Constitutions. The established *stare decisis* cases are quite clear, that all searches must be reviewed by a competent judge prior to the search and there must be a search warrant before the indictment. Where here, the search warrant was not issued until after the day of the indictment. Therefore, the certification of Peoples Exhibit Four as being lawful opens the door to negligence and liability to all of the entities responsible for the deceit and malicious fraud in certifying a constitutionally deficient warrant. This means that the Fort Collins Police Department, Larimer County, The City of Fort Collins, and the District Attorney's office are all complicit in the fraud, to include the Attorney's General office.

The violations become even more glaring when considering the fact that police used four different advanced police tools on the phone unconstitutionally without a search warrant to include: 1. Cellebrite, UFED (Universal Forensic Extraction Device), Physical Analyzer and Cell Hawk. As early as 2018, the appropriate courts have ruled that Cell Hawk is too prejudicial and violating of a defendant's substantial constitutional rights to not be allowed to be used in trial, yet all of these entities used this technology against Mr. Anderson in 2017. This was unconstitutional. To this date, no entity has provided any court or Mr. Anderson's person with any document or warrant that justifies the use of these police tools on his phone, nor has there been any warrant that justifies a search prior to the filing of their police complaint on February 23rd, 2016. *Where here, the people's exhibit four was issued on February 24th, 2016.* How was Mr. Anderson indicted with evidence that was extracted from his cell phone when law enforcement and all of these entities had no search warrant to justify the extraction of the data or even the constitutionality of the search itself?

For these reasons, the 44.1 warrant law becomes unconstitutional. It violates due process and equal protection of the law. It further violates the Fourth Amendment of the United States Constitution. This results in a very clear malicious attempt by these entities to deprive Mr. Anderson of the justice that he deserves. Not only has he demonstrated a high ethical standard as it applies to his legal comprehension of the Constitution and Law, but he has demonstrated an even higher ethical standard in the way he has navigated nearly ten years of incarceration. An incarceration that is unconstitutional when considering that the detaining sentence was acquired in violation of both the protections of the CO and US Constitutions, and established rules of Federal Law. Therefore, this case opens the door to malicious prosecution and subverting of justice, and the clear proof in the record of the negligence opens all of these parties to monetary liability, as is appropriate when individuals deliberately violate the law in Colorado.

**CLAIM EIGHT: The certification of a verdict of guilty was unconstitutional when the unanimous verdict form was missing Colorado State University juror Anne Avery's signature and it was unconstitutional to allow the prosecution to tamper with a jury's composition allowing for an unheard of seventh peremptory strike. This violates the right to a fair and impartial jury trial and double jeopardy bars retrial and predisposition.**

The governing sentence currently holding Mr. Anderson in custody is unconstitutional, as the verdict form is missing a signature of a juror. The Honorable Judge Fields had chosen seat #5 as the alternate juror. At the close of voir dire, the juror Donna Jo Hope had landed in seat #5 and was randomly selected as the alternate juror. This woman was a partial and prejudiced individual against Mr. Anderson with a predetermination to convict him regardless of the evidence due to her being a crime victim in a similar crime who never received justice.

In order to secure an unconstitutional conviction, the City of Fort Collins, Larimer County, and the District Attorney's Office committed an outrageous fraud. This fraud was when they rearranged the jury order to move Donna Jo Hope from seat #5 to seat #8. This allowed Mrs. Hope to be changed from an alternate juror to a duly appointed juror to arbitrate the resolution of the case at law. This action calls the entire trial mechanism and verdict into question and is clearly unconstitutional.

The violation is even more malicious and glaring when considering that Mr. Anderson was a Colorado State University student enrolled in a prestigious College of Business program with an accumulated G.P.A. Of 3.291, and the juror #4 Anne Avery was a faculty professor at Colorado State University. This juror had stated in voir dire that individuals can falsely accuse others in a personal vendetta, and the People chose to move her from juror #4 to juror #5. Anne Avery was not selected to be the alternate juror, was duly appointed at law to arbitrate justice in Mr. Anderson's case, and the deliberate and malicious choice to remove her outside of the presence of Mr. Anderson or Mr. Anderson's counsel amounts to clear unconstitutional violations of Mr. Anderson's right to a fair and impartial jury trial, as well as due process of law.

The double jeopardy clause attaches to this case, as well as speedy trial, when the verdict form is missing Anne Avery's signature. The missing of Anne Avery's signature is grounds for a Federal Civil Lawsuit. From 2016 till 2025, Mr. Anderson has been unlawfully and unconstitutionally detained in violation of the CO and US Constitutions, when the People were able to exercise an unheard of 7th peremptory strike. This most Honorable court may have never even heard of such an allegation, but it is clearly proven in the record, as Judge Fields records the order of the jury at the close of voir dire, and then makes an additional record the following day of the re

arranged seating order.

The juror members may sit wherever they want for them to be comfortable, but at the close of the trial, Donna Jo Hope who had been randomly selected as the alternate juror due to Judge Field's rules, should have been removed from the trial. The choice to remove Anne Avery instead, when she was not randomly selected as the alternate juror amounts to a very clear and conscious disregard to Mr. Anderson's constitutional rights, and amounts to a very clear violation of Due Process of Law, violation of the Double Jeopardy clause, and amounts to a false imprisonment and unlawful detainment claim.

To this date, the People, the State of Colorado, the City of Fort Collins, and Larimer County have all not denied or rebutted that this occurred but have attempted to avoid the clear violation of established bedrock rules as they apply to certification of jury's and the crime of jury tampering. The convictions become therefore unconstitutional when considering that the conviction was acquired through the deliberate and malicious attempt to circumvent justice by tampering with the jury composition outside of the presence of Mr. Anderson and his counsel.

**CLAIM NINE: Defamation of Character committed intentionally by the prosecution maliciously, when they have repeatedly stated that Mr. Anderson is infected with H.I.V. Mr. Anderson is H.I.V. negative, has repeatedly tested negative for any diseases, and the People have recently depicted him as a "Morally Dangerous Individual" who would knowingly and intentionally infect another person with H.I.V. while having actual knowledge that Mr. Anderson is H.I.V negative, and poses no risk to the community.**

The People, the State of Colorado, the City of Fort Collins, Larimer County, and the Fort Collins Police Department have all entered into their personal liability and voided out their immunity defenses when they have repeatedly claimed falsely and maliciously to various facts.

To commence, the most significant development constitutionally in this instant action law suit is the development that in December, 2024, the People claimed incorrectly and falsely that Mr. Anderson is infected with H.I.V. Mr. Anderson does not have H.I.V. This labeling of him as an individual who would knowingly and intentionally expose another person to H.I.V while having actual knowledge of multiple test results that show that he is H.I.V. negative, results in Defamation of Character. This Defamation of Character is actionable in Federal Court as it was published in a formal official public filing by the People as being lawful. As a result of this declaration, it is clear and evident that they have defamed Mr. Anderson's person. His person is unable to fix his status or reputation due to the unlawful stain and damage to his person, and for the rest of his life, people may falsely attribute him as being H.I.V. positive. There is no other cure than to seek immediate redress in

the United States 10th Circuit, as the People, the State of Colorado, the City of Fort Collins, Larimer County and the Fort Collins Police Department have shown significant and deliberate indifference to his substantial constitutional rights and protections afforded to Mr. Anderson's person by both the Colorado and Federal Constitutions.

These entities have further entered into their liability by twisting court rules upon which they have completely disregarded Mr. Anderson's significant liberty rights and right to access to the courts under a reasonable standard as it applies to equal protection of the law and the due process clause of both the Colorado and United States Constitutions. Mr. Anderson has filed numerous petitions for relief that have been avoided or ignored by counsel in violation of established Colorado Supreme Court precedent established under *People v. Seguro (2024).* This means that Larimer County and the City of Fort Collins have deliberately attempted to deny Mr. Anderson access to the courts as would be reasonable under his due process rights. It raises further liability questions for this most honorable court, when considering there has been a five year delay that has caused Mr. Anderson to languish unnecessarily in prison for years. How long have these entities denied Mr. Anderson justice in his cases, and as Mr. Anderson has advocated actual innocence, why has no one investigated his allegations of defamation of character, lack of constitutionally valid search warrants, the significant jury tampering discovered in his case, and the protections afforded to him by both the double jeopardy standard and the speedy trial standard.

Had the People done their due diligence, or simply been reasonable decent human beings, then this court would not have had to deal with this lengthy litigation. This litigation is only filed to preserve the constitutional and federal rights that have been deprived from Mr. Anderson's person and to seek redress as is appropriate under the law.

**CLAIM TEN: Class-Action Factors that apply liberally to Mr. Anderson's case, that justify relief, and show forth federal law violations and constitutional violations by the Colorado Department of Corrections and all of their employees.**

## CLASS-ACTION FACTORS

1. The State of Colorado sentenced Plaintiff Anderson to an indeterminate length, meaning once he has "successfully progressed" in sex offender treatment through the Department of Corrections' Sex Offender Treatment and Monitoring Program (SOTMP), that he would become eligible for parole.
2. However, the Department of Corrections has refused to provide the treatment required for Plaintiff Anderson to become eligible for parole, virtually foreclosing all reasonable eligibility for Plaintiff's immediate release in the near future.
3. The CDOC provides preferential treatment and speedily releases for higher-risk offenders than Plaintiff Anderson.

4.  The CDOC has arbitrarily prioritized treatment solely based upon an individuals type of sentence, whether determinate or indeterminate, and have left Plaintiff Anderson on the wayside, although he is listed as a lower risk level of recidivism.

5.  The CDOC is not prioritizing access to treatment based upon severity of the individual's crime, his individual risk of re-offending, his willingness to participate in treatment, his behavior while incarcerated, his due process liberty interest rights, or any other relevant and reasonable metric system.

6.  Plaintiff Anderson asserts that CDOC's failure to provide timely and reasonable treatment to offenders serving indeterminate sentences is arbitrary and capricious.

7.  Plaintiff Anderson asserts that he has relevant first-hand knowledge applicable to the CDOC's negligence in their collective refusal to treat individuals in a timely and reasonable manner in clear disregard of individual's substantial constitutional rights or federal law.

8.  The CDOC's basis for this fundamental denial of due process or liberty interest violations is based upon their assertion of an inability to retain, train or hire new therapists to treat offenders.

9.  The choice to repeatedly and steadfastly refuse to provide treatment to individuals serving indeterminate sentences, especially those who have already served their "bottom-number" is a breach of law and a breach of sentence.

10. It amounts to a clear form of cruel and unusual punishment to require individuals to serve a substantial larger period of time than the time determined by the arbitrator of sentence (Judge).

11. This arises from CDOC's continued failure and refusal to provide statutorily mandated treatment to inmates serving indeterminate sentences under Colorado's Sex Offender Lifetime Supervision Act of 1998 (SOLSA), C.R.S. SS 18-1.3-1001 et seq. The plain language of the Act mandates that sex offenders "shall be required as part of the sentence to undergo treatment" and will not be released on parole until they have "successfully progressed in treatment" C.R.S. SS 18-1.3-1004 (3); 18-1.3-1006 (l) (a). Participation in sex offender treatment is a condition precedent to being eligible for parole.

12. Plaintiff Anderson is an inmate in the custody of CDOC serving an indeterminate sentence at Crowley County Correctional Facility. Plaintiff Anderson was convicted of an offense arising under SOLSA and is thus entitled to receive, and must progress in, the statutorily mandated treatment to be eligible for parole.

13. Despite the clear statutory mandate that CDOC must provide Plaintiff Anderson with SOTMP treatment, CDOC has arbitrarily and capriciously denied Plaintiff Anderson the opportunity to progress, thereby denying Plaintiff Anderson any reasonable opportunity to be considered for parole. This deprivation of treatment has resulted in a *de facto* lifetime prison sentence for Plaintiff Anderson, and is an unlawful result of Defendant's conduct.

14. Plaintiff Anderson was transferred to Centennial Correctional Facility to complete Phase 2 treatment. Defendant Ryan Flores made a policy change to transfer the program to Fremont County Correctional Facility. This resulted in Plaintiff Anderson being removed from the program without a due-process hearing and extended his immediate incarceration. CDOC has acted arbitrarily and capriciously by prioritizing the treatment required for indeterminate sentences to only be available to a handful of personally selected inmates and the remainder is parole violators, long-term offenders, and individuals serving determinate sentences that do not require completion of treatment for parole eligibility.

15. The problem here is exacerbated to unconstitutional proportions when considering CDOC's deliberate and malicious choice to not retain full staffing levels. This results in less availability for classes and purposefully denies people access to requisite treatment programming required for their parole eligibility. Less staff means fewer classes which mean fewer releases. This is inherently unconstitutional.

16. SOTMP is grossly understaffed, with twenty-six vacant therapist positions of the forty-one

required and a current fifty-three percent vacancy rate for SOTMP staff overall.

17. The deprivation conditions in DOC have deprived inmates such as Plaintiff Anderson of constitutionally protected interests, due process and equal protection of the law; while causing an undue burden upon the state that is wasteful costing the Colorado taxpayers approximately $91.4 million annually.

18. The Defendants have failed to provide reasonable access to treatment. The arbitrary manner in which some Defendants are prioritized and selected for treatment while denying others of equal access has had a drastic mental, physical and emotional damaging effect to the affected inmate. Plaintiff Anderson files this action with the cause of action of having suffered enormous pain and suffering, the weight of which feels as though he is being crushed under a mountain, for the sole purposes of the State to exact torturous revenge upon him. This has caused irreparable damage to Plaintiff Anderson's family to include the substantial rights of his child Celeste, who are all currently languishing unnecessarily while Plaintiff Anderson is forced to remain indefinitely in prison with no reasonable ability to be released in the near future all in an effort to punish him more severely than a similarly situated inmate for advocating and zealously defending his and our collective constitutional rights over the years. This is fundamentally wrong and easily rectifiable by this honorable court.

19. Rather than progress Plaintiff Anderson for potential release, the Defendants have chosen to remove Plaintiff Anderson from the program without a termination hearing, and transfer him to a notoriously violent private facility, after working him extensively in a DOC kitchen for over a year with no intent of releasing him, all while promising him the possibility of a release for good behavior. This has caused a high level of anxiety, depression and desperation in the actions of Plaintiff Anderson to necessitate filing this complaint.

20. At all time relevant to the allegations in this Complaint, Plaintiff Anderson was imprisoned within the CDOC at Arkansas Valley Correctional Facility, Centennial Correctional Facility, and Crowley County Correctional Facility.

21. At all times relevant to the allegations in this Complaint, Defendants Moses Stancil, etc were all citizens of the United States, residents of and domiciled in the State of Colorado, and were collectively acting under color of state law in their capacities as employees of the State of Colorado.

22. This instant action arises under the CO and US Constitution's and the substantial laws of the United States, to include Article III, Section I of the U.S. Constitution and 42 U.S.C. SS 1983, 1988. This Federal Court has the authority to grant the declaratory and injunctive relief requested herein pursuant to 28 U.S.C. SS 2201-2202, and award relevant damages for violations of constitutional rights. Original Jurisdiction is conferred upon this honorable Court pursuant to 28 U.S.C. SS 1331, 1343; and all other relevant citations implied.

23. The Venue is properly in the 10th United States District Court for the District of Colorado pursuant to 28 U.S.C. SS 1391.

24. The Department of Corrections is a state institution established by Article VIII, Section I of the Colorado Constitution, under C.R.S. SS 17-1-101, the elected governor Polis is subject to consent of the state senate, through which he appoints the CDOC's executive director Stancil.

25. The CDOC's executive director Stancil is responsible for all employees within the CDOC.

26. Administration of the CDOC is, in theory, under various laws located in Title 17, Section 1 of the Colorado Revised States, "Corrections"; see C.R.S. SS 17-1-101 et seq.

27. CDOC operates twenty-one prisons consistent with C.R.S. SS 17-1-10a 3(1) (b), yet only offers SOTMP treatment at two of these prisons: Fremont Correctional Facility and Territorial Correctional Facility.

28. As of November 2023, Centennial Correctional Facility's treatment was shut down to remove availability of treatment of 96 beds to transfer those beds to Fremont Correctional Facility. That

choice has exacerbated the problem and violated substantial numbers of individuals' constitutional rights.

29. The Defendants have limited the facilities where SOTMP can be offered at intentionally and by arbitrarily classifying inmates as S5R, indicating that all individuals listed as S5R must participate in offense-specific treatment which results in unnecessarily higher facility security assignment classifications. Due to the significant parole miscalculations and overrides in Plaintiff Anderson's case, it appears the SOTMP program has listed him as "I" –"Ineligible" to receive treatment in direct violation of his constitutional rights.

30. The Defendants have also acted intentionally with indifference under the law by restricting the capacity limits of SOTMP by referring almost 25% of the state prison population to SOTMP, even when such individuals are not classified as "sex offenders" for purposes of the SOMB. See, e.9., C.R.S. SS 16-11.7-102(2) (aXIV).

31. Although C.R.S. SS 16-11.7-102(2)(a) was updated in June 2023 to make clear that a person with a prior conviction or adjudication for a sex offense that is now being sentenced for a non-sex crime is not a "sex offender" unless a court makes specific findings, Defendants have collectively failed to update DOC Administrative Regulation (AR) 700-19 to reflect this change in law, have collectively refused to enforce the statutory definition, have collectively refused to enforce governor Polis' substantial orders within the Sunset Bill passed by the legislature, and continue to refer individuals to SOTMP treatment who are neither "sex offenders" nor statutorily required to participate in sex offender treatment. The Defendant's lack any basis for requiring non-sex offenders, who fall outside the statutory definition in C.R.S. SS 16-1 1.7-102(2), to undergo sex offender treatment. This choice has deliberately reduced the availability to treat individuals on the global referral wait list by 25 % efficiency and is violating of all of the individuals waiting substantial constitutional rights.

32. To the contrary, Defendants have updated AR 700-19, effective May 1st, 2024, but retained a narrow definition of "sex offender" that does not match the revised statutory definition adopted in June 2023. AR 700-19.

33. The Defendant's collective decisions on this point is all the more shocking because Defendant's refuse to provide treatment to the subset of the SOISA-sentenced sex offenders who are ready, willing and needing such treatment to be eligible for parole. This means the CDOC has deliberately employed practices that are violating of individuals substantial constitutional rights, especially in regard to due process violations.

34. Plaintiff Anderson has properly exhausted administrative remedies or administrative remedies are readily unavailable. This is particularly true when the State of Colorado has deliberately not filed substantial grievances, returned grievances to Plaintiff Anderson, and in three collective grievance processes that were properly exhausted, have attempted to claim erroneously that the grievance procedure was not exhausted.

35. CDOC has a three step administrative procedure purportedly in place of inmates to resolve complaints about treatment or violations of their rights. These administrative procedures is virtually unavailable as a dead end due to the Defendants collectively raising road blocks, lies, threats, and inconsequential facts; rather than addresses the issue and fix the problem when challenged properly through the grievance procedure or venue. This means that relief is unable to be awarded through the grievance procedure. Attached to this instant action are three completed grievance procedures for this court to review the procedure and whether the responses were appropriate or not. (See Appendix A1-3, B1-3, C1-3). The failure to provide treatment has been the subject of multiple federal lawsuits, and currently faces a class-action law suit for similarly situated inmates as Plaintiff Anderson. In each respective case, the CDOC has failed to take any responsibility of face any substantial liability for its collective failure to provide the mandatory treatment, evidencing a clear policy of categorical denial. The only solution to the

reoccurring violations of substantial constitutional rights are high damages and intrusive injunctive that will force the State of Colorado to amend policy to fix the problem. There should be a reasonable and appropriate consequence for any individual who refuses to abide by Judge's orders, the legislature orders, or sentencing schemes determined to be appropriate by honorable magistrates. It should be deemed unconstitutional for any citizen to supersede the position of a magistrate and decide the applicability of the law, the interpretation of the law, and apply their decisions unilaterally to individuals. These types of violations cause irreparable and exacerbated individuals to a significant amount of individuals that are incarcerated and unable to defend themselves against the continued violations of their rights of the collective Defendants. Any inaction of this court would justify such conduct, and there will be a continuation of abuses suffered by United States citizens at the hands of their abusers. This is inherently and fundamentally unconstitutional and violated Federal Law.

36. Plaintiff Anderson has thus exhausted all available administrative remedies.

37. Although Plaintiff Anderson is ready, willing and able to do the necessary work to ensure that he can be safely released into the community, treatment has been intentionally denied to Plaintiff Anderson and other similarly situated individuals sentenced to indeterminate sentences under SOLSA. "A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." *King v. Ciolli*, No. 1:23-CV-00519_CNS, 2023 WL 2933405, at *3 (D. Colo. Apr. 13, 2023), opinion clarified, No. 1:23-CV-00519-CNS, 2023 WL 3963614 (D. Colo. May 10, 2023), vacated and remanded, No. 23-1201, 2024WL 1179908 (10th Cir. Mar. 19th, 2024). The futility exception generally applies when administrative relief is effectively foreclosed. This may occur in two situations: (1) for another inmate's same grievance, there has been an adverse decision disposing of the precise issue raised by the petitioner, or (2) other inmates' same grievances have been met with a "policy of categorical denial."

38. In creating the SOLSA, the Colorado Legislature explicitly found "that keeping all sex offenders in lifetime incarceration imposes an unacceptably high cost in both state dollars and loss of human potential." C.R.S. SS 18-1.3-1001. To this end, the legislature declared that individuals convicted of certain sex offenses must "receive treatment and supervision," and it provided several mechanisms by which treatment and supervision can occur.

39. SOLSA further establishes the statutory framework for lifetime supervision of sex offenders, and expressly mandates treatment for sex offenders with indeterminate sentences. See C.R.S. SS 18-1.3-1004(3) ("Each sex offender sentenced pursuant to this section shall be required as part of the sentence to undergo treatment to the extent appropriate" under law.)

40. When individuals with convictions for sex crimes first enter CDOC, they are automatically classified as S5 and referred to SOTMP, per AR 700-19. Further assessments at CDOC'S Denver Reception and Diagnostic Center assign an inmate a qualifier as outlined in AR 700-19, or S5-R. Individuals classified S5-R are placed on the "Global Referral List" (GRL), which is effectively a master list for individuals requiring sex offender treatment who are within four years of their parole eligibility date (PED). This four-years-to-PED requirement has no basis in law and is an arbitrary resource prioritization decision of the CDOC. Where here, Plaintiff Anderson was classified as having to serve an additional four years, plus the 18 months incarceration extended by a corrected mittimis in violation of his actual sentence, and is now past two parole hearings past parole eligible dates, and still has not received treatment.

41. Given the Defendant's continued refusal to provide timely access to treatment, many individuals have sued Defendants. Those who have successfully progressed in their civil lawsuits against the defendants are "miraculously" placed into SOTMP, even when listed as P-pending, D-Does Not Meet Criteria, I-Ineligible, or have refused to participate. These subjective qualifiers were recently expanded to include more categories, but are an extension of CDOC's arbitrary and

capricious conduct in how they label or assign inmates different qualifier codes which are not standardized or objective or even unilaterally applied. Plaintiff Anderson has physically witnessed individuals who have been incarcerated less than two years being fast-tracked into treatment. Consistently, the defendant's have collectively argued that the GRL "fluctuates" due to individuals returning to prison, or people being released on parole. This means that the Defendant's are collectively picking who is eligible for treatment based upon prior treatments, prior relationships or successful completions with current therapists, or are returning on parole violations. To be specific for this honorable court, Plaintiff Anderson has witnessed SOTMP being denied to an individual who was on a parole violation for over eleven years, as well as the majority of the individuals being treated at Centennial Correctional facility were parole violators with the average treatment time of 4 to 7 years of participation, and long-term repeat offenders with multiple parole periods. These fundamental problems thus remain un-redressed, un-remedied and un-cured. Is it fair for a sexually violent predator to have been terminated twice and been out on parole and back on a parole violation, in the same time period Plaintiff Anderson has patiently been waiting for an equal opportunity to progress back to his family? The answer is quite clearly no.

42. Although the Defendants collectively have minimized their actions within their communications with the legislature, it appears that a significant amount of determinate sentences have been prioritized over individuals serving indeterminate sentences. The prioritizing of treatment for individuals who do not necessarily require treatment before release has caused Plaintiff Anderson to excessively languish in prison long past the established sentences ordered by a Judge, and should be deemed as unreasonable.

43. The Global Referral List has been prioritized based upon factors in AR 700-19, which state, "1. Offenders with a judicial adjudication of a sex crime that are within four years of their parole eligibility date are prioritized for sex offense specific treatment based upon, but not limited to, the following: a. parole eligibility date; b. risk for sexual recidivism; c. prior SOTMP treatment opportunities; d. institutional behavior; e. Ancillary treatment needs, mental health, substance use disorder treatment. In a harsh reality, the CDOC's "prioritization" of offenders off the GRL is completely arbitrary, malicious, capricious and avaricious. The Defendants collectively do not know and cannot explain how any individual citizen is prioritized on the GRL based upon these relevant criteria, which also fails to articulate when and how people with indeterminate versus determinate sentences are prioritized.

44. It is conclusively positive that the Defendants collectively know that individuals on the GRL can be moved down the list for poor institutional behavior, yet consistently transfers individuals to higher risk facilities where the possibility of being ostracized, assaulted, or maligned by the general population is more likely to occur. Plaintiff Anderson was recently housed in a Closed Custody Transition Unit, in violation of his rights, and then transferred to a notoriously violent private facility that is known to riot. These actions are deliberately malicious and violating of Plaintiff Anderson's constitutional rights, and substantial due process rights under the Constitution.

45. There are many factors relevant within the Defendant's collective control that cause the arbitrary imposition of *de facto* life sentences on inmates such as Plaintiff Anderson: CDOC refuses to properly fund or staff SOTMP positions, it refuses to provide treatment anywhere except two facilities, treatment locations are in remote and undesirable locations from a provider's standpoint, many community providers who would provide treatment are denied access to the interior of the facilities, refuses to permit outside contractors as mandated by the Sunset Bill to treat individual inmates, denies individual treatment even if paid for by individual, refuses to properly move inmates to therapeutic environments or even facilities were therapy is available, refuses to provide transparency in its management and prioritization of individuals on the GRL,

and virtually have denied court-ordered treatment indefinitely to similarly situated individuals. These constitutional and federal deprivations continue to occur, and will continue to occur, without court order ordering the CDOC to immediately fix these issues.

46. As repeatedly stated, the Defendant's collective refusal to provide reasonable treatment to Plaintiff Anderson is directly as a result of a policy decision to shut down Centennial Correctional Facility's SOTMP pods, and to prioritize sex offenders with determinate sentences who have mandatory release dates over individuals, such as Plaintiff Anderson, who are serving indeterminate sentences without a mandatory release date. This "cutting in line" process happens over and over, and has fundamentally denied Plaintiff Anderson any reasonable access to treatment and virtually foreclosed any progressive release back into society.

47. CDOC's allocation of access to SOTMP beds is capricious and in direct disregard to Plaintiff Anderson's due process liberty interest in reasonable and timely access to SOTMP in order to "progress in treatment" and become eligible for parole. In a clear choice to disregard Plaintiff Anderson's substantial rights, CDOC has chosen to prioritize populating the GRL with individuals serving determinate sentences and parole violators, which has released higher risk people consistently over less risk people such as Plaintiff Anderson. One SOMB Board member noted on January 19th, 2024; "35 percent of the people who are waiting for SOTMP are above average or well above average risk on determinate sentences. Those people are the most dangerous sex offenders that CDOC has and they're going to get out without treatment." At the same time, this SOMB board member noted that 41 percent of inmates on the GRL are "below average or low risk" who "is just sitting there on indeterminate sentences." These statements show there is a conscious disregard or inability for CDOC to provide timely treatment and years of incarceration are added to lower risk individuals simply because the CDOC has prioritized a different category of individuals for fast-track into treatment. This basically means the GRL is not functioning legally, as the State of Colorado cannot keep up with the explosion in incarcerations.

48. Put another way, CDOC has placed determinate offenders at the top of the GRL simply because they will otherwise be paroled prior to receiving treatment, causing low-risk inmates serving indeterminate sentences such as Plaintiff Anderson to languish in prison without treatment. And there is no reasonable end to this problem as new determinate inmates enter prison and the GRL continues to grow. About eighty new S5's are added to the prison population every month while Defendants collectively told the General Assembly's Joint Budget Committee in December 2023 that they can only successfully discharge 160 S5's from SOTMP each year. In 2016, State Auditors concluded that if no one new was added to the GRL at that time, it would take CDOC eight years to eliminate the GRL.

49. Relevant to this instant action, Plaintiff Anderson witnessed several violating actions by the State of Colorado. Firstly, the CDOC refused to implement the changes within the Sunset Bill passed by Governor Polis and the legislature, claiming that they had a 10 month window to comply with the audit, followed by a 30 day window to respond through lawyers. It should be deemed violating of the Constitution if the CDOC has become an institution that can interpret new legislation in their own interpretations, rather than the explicit meaning implied in the statute. Each individual has abused their position of authority when they have failed to comply with the required legislature changes that have drastically changed their practices. The bill specifically states that CDOC is required to "prioritize" treatment for individuals who have reached their Parole Eligibility Date or are past their Parole Eligibility Date, and if they are unable to provide this service, then they must outsource to appropriate therapist providers. It appears apparent that CDOC and the Defendants collectively have chosen not to employ any of these reasonable situations, but rather have limited or restricted SOTMP access by removing the 96 bed housed at Centennial Correctional Facility, and have entered into the realm of liability

and negligence. The only appropriate action is now a federal 1983 civil rights lawsuit and jurisdiction appropriately rests with this most honorable court.

50. The wait for treatment is growing longer. In 2023, CDOC admitted an average of sixty-nine new S5 inmates into its prisons per month, for a total of 828 people referred to the SOTMP program. On the other hand, the program graduates only 13.3 inmates per month or 160 per year, leaving a backlog that grows annually five times the size in just one annual year. The list therefore is growing unfeasible and unreasonable, as each year increases the wait time by an additional 5 years. In approximately 5 year's time, the wait time to receive court ordered treatment could be as long as 25 years. If a Judge determines that an individual must serve four years minus eligible good time plus complete treatment to be released, and the CDOC is allowed to retain that individually maliciously for 25 consecutive years, that becomes inherently unconstitutional as a matter of law. These violations are grievous in nature, and could be considered un-rectifiable under the law.

51. It appears apparent, that CDOC has prioritized individuals for treatment based upon criteria unrelated to their statutory obligations or any legitimate penological interests. This has resulted in a direct violation of Plaintiff Anderson's substantial rights. The problem is exacerbated by the departments and defendant's collective reasoning that they cannot fill therapist positions. It is simply unacceptable for CDOC to allow low-risk, parole-eligible individuals such as Plaintiff Anderson, who are willing and able to receive treatment, to remain in prison because of a "staffing problem" that has persisted for decades. CDOC has sought no legislative remedy for a statutory mandate it has failed to adequately implant at any time since November 1st, 1998, SOLSA's effective date. CDOC has intentionally refused to adequately fund, staff, prioritize or provide required treatment to eligible individuals, which has kept them locked up in prison at the individual's and taxpayers' expense and in direct violation of substantial due process and liberty rights, as well as substantial equal protection of the law rights.

52. CDOC's deliberate choice to deprive Mr. Anderson reasonable and timely access to court-ordered treatment while prioritizing worse more dangerous inmates is unconstitutional and justifies relief in this case. There are several reasons for the backlog of inmates awaiting treatment in CDOC, yet the arbitrary choices to refuse access to inmates' results in clear forms of negligence in consideration of the inmates' substantial constitutional rights and liberty interests under the CO and US Constitutions. The Defendant's position is clearly that they strongly suggest the withholding of treatment to eligible inmates who have already served the bottom number of their sentence.

53. The 2016 Colorado Office of the State Auditor produced a Performance Audit of CDOC's Behavioral Health Programs which concluded that CDOC's failure to provide treatment to sex offenders resulted in high-risk offenders with determinate sentences being released back into the community without treatment, while offenders with SOLSA sentences remaining in prison indefinitely with increased costs to the state, and no foreseeable release of custody. In 2016, this audit found that at that time, a single offender costs about $36,000 per year to incarcerate and there are 1,231 offenders on the GRL who have passed their parole eligibility date, amounting to an annual cost to the state as high as $44 million per year. These costs have risen when in the year 2023; CDOC has estimated the average inmate incarceration cost at $56,766 per year.

54. A 2017 audit of DOC titled "Offenders with Lifetime Supervision Sentences Remaining in Prison Indefinitely," which detailed the extraordinary wait list to obtain treatment services, resulting in many low-risk offenders being held for life, especially considering these inmates can be effectively and safely managed and treated within the community, and releasing higher risk inmates or treating higher risk inmates shows the state is negligent in terms of enforcing court orders and sentencing matrix's. It is now time for this Honorable Court to follow the "white rabbit;" the very one that released Neo from a life of servitude and slavery to a system that does

not follow its own rules. The failure or refusal to provide reasonable and timely treatment is an ongoing problem that has not been fixed, or addressed, and the annual totals of individuals awaiting treatment is expanding exponentially faster than inmates are released into the community, resulting in no reasonable solution for large portions of the CDOC population to remain incarcerated for life. This is inherently unconstitutional.

55. Large portions of the people who are currently in treatment are classified as "maintenance." This means that individuals have completed treatment but are still within the bed required for the next inmate to progress and will remain so until they are paroled or released. This causes an unnecessary delay to the progression of the next eligible inmate.

56. The unlawful conduct suffered by the Colorado Department of Corrections has caused Mr. Anderson irreparable harm. Mr. Anderson was willing to receive treatment for several years and eligible to be afforded treatment by CDOC, yet has been considered ineligible to progress due to the negligence of the department. This includes the miscalculations of his sentence, the refusal to treat him when he was moved for a treatment program, and the discriminatory actions included in this complaint. This has resulted in Mr. Anderson's individually, and his family to be treated differently than a similarly situated inmate. When considering other inmates with worse crimes have been into treatment, terminated, back into treatment, then paroled, and back on a parole violation, and fast-tracked into treatment with preferential treatment shows a clear intentional and malicious disregard to the liberty interests of Mr. Anderson. This should be deemed by this Honorable Court as unnecessarily wasting state resources, unfair, and endangering the community by exposing the community to higher-risk inmates while depriving lower-risk inmates an opportunity to re-integrate into the community, even after serving the bottom-number of their sentence. This is unconstitutional. It is further unconstitutional when considering the active policy of the CDOC to determine who is to be treated and who is not to be treated. This results in the CDOC arbitrarily becoming the arbitrators of individuals' sentences, oftentimes holding inmates to worse sentencing matrix than considered by a judicial officer. If someone is held in custody on a 2-Life sentence, yet is ineligible for release for 18 calendar years that means that individual is serving a 24-Life sentence. How is it fair for an individual classified as non-violent to be held longer than a repeat habitual sex offender classified as a sexually-violent predator? This is clearly counter-intuitive and counter-productive. This inefficiency should be addressed by this Honorable Court to include precedent deciding motions in regard to the liberty rights and due process rights of individuals convicted and sentenced in the State of Colorado.

57. The Defendant's unlawful patterns, practices, and/or policies (to include acts) have affected Mr. Anderson substantially in a negative way. These constitutional errors will continue to occur without injunction relief of this most honorable court. The refusal to implement the SOLSA requirements, and creating policies or administrative decisions that virtually side step these errors, is direct proof that the CDOC is negligent.

58. The claims raised propose significant questions of law and questions of fact that apply to incarcerated persons and policy decisions of the CDOC that directly impact or harm citizens of the State of Colorado. These questions include, but are not limited to; Whether Mr. Anderson has been arbitrarily denied treatment required by law, Whether Mr. Anderson was arbitrarily denied access to post-educational pursuits, Whether Mr. Anderson has been force labored, meaning the department has prioritized "facility needs" over his parole-eligible release, Whether the Defendants violated contractual agreements with the State of Colorado regarding implementation of sentences appropriately decided by Judicial Officers, Whether the Defendants, and Department have over-stepped their bounds and intentionally changed inmates sentences from life with parole eligibility to life without possibility of parole due to foreclosing opportunities to progress in treatment. Whether the actions are constitutionally invalid when considering the developments of DNA Expert Witness Yvonne "Missy" Woods, and Mr.

Anderson is still incarcerated.

59. These common questions satisfy the requirement of *Fed. R. Civ. P. 23(a)*.

60. These claims are non frivolous, and are raised stating that the unlawful patterns, practices, policies and/or actions of Defendants individually and collectively have violated Mr. Anderson's substantial legal rights. Accordingly, injunctive and declaratory relief are among the predominate forms of relief sought in this case. However, punitive damages and compensatory damages are also sought for injuries suffered by Mr. Anderson's person.

61. The Defendant's have acted on immoral grounds, described herein, generally applicable to Plaintiff Mr. Anderson, by adopting and following systematic, discriminatory patterns, practices, policies and/or actions that have arbitrarily and maliciously deprived the constitutional rights of Mr. Anderson. These deprivations of Mr. Anderson's constitutionally protected rights gives rise to this section 1983 suit, as he has appropriately exhausted all available state administrative remedies in three separate ladders, in which the department has denied relief repeatedly with falsehoods.

62. These relief's are the factual and legal predicates for Mr. Anderson's entitlement to monetary and non-monetary remedies for individual losses cause by, and exemplary purposed necessitated by, implied or stated constitutional right violations.

63. This amounts to a fourteenth amendment violation or denial of procedural due process and equal protection of the law. The SOLSA creates a protected liberty interest in an inmate receiving sex offender treatment in a timely matter, because it mandates treatment coextensive with incarceration, assuming equal access to SOTMP treatment prior to one's Parole Eligibility Date such as the opportunity to be meaningfully considered for parole at that time, and conditions parole eligibility based upon having progressed within SOTMP. The denial of access to SOTMP virtually forecloses the door indefinitely to an equal opportunity to be treated and be considered less dangerous. Under the Fourteenth Amendment to the United States Constitution, Mr. Anderson may not be deprived of his protected liberty interests without due process of law. Where here, it should be clear to this Honorable Court, that there have been no hearings in regard to Mr. Anderson's status for nearly 10 years, to include approximately 7-8 years incarceration, upon which he was eligible for access each year without being given access to the program required for his parole eligibility. This fact raises further concerns when considering that in 2022, SOTMP did not respond to Mr. Anderson's questions, then moved him to treatment a year later in 2023, denied him access to his treatment contract and therapists, then created a policy decision that shut down access to 96 treatment beds, virtually terminating Mr. Anderson from the program without any hearing, then worked him for an additional 6 months, denied him access to a Bachelor's program, in which he is the only inmate accepted unconditionally to Adam's State University as a Senior in the Bachelor's in Business Administration program, denied him access to his FAFSA he earned, then worked him "facility needs" for 6 months, then fraudulently moved him to Core Civic, a facility that he had already denied for safety concerns, and exposed him to a facility that does not have the capacity to make him eligible for parole, and intentionally endangered his life. If this does not cause a Due Process right violation, then what does?

64. Mr. Anderson has experienced first-hand and suffered significant harms that justify relief, as a direct result and proximate result of the Defendant's actions against him. Mr. Anderson will continue to suffer and experience significant harms from the Defendant's actions absent a grant of declaratory, injunction, or compensatory relief. Mr. Anderson would go so far as to state that the only thing that would hold the departments accountable to changing their policies is a significant punitive consequence. This should be implemented as a result of their negligence, particularly emphasis given to the fact that the department and individuals individually and collectively refused to apply Governor Polis's directives in the Sunset Bill. If the department

does not even listen to the legislature and the Governor, then have they not indeed became an entity that should be punished for their disregard of the law, the legal authority of their boss, and the inherent important of adhering to new bills of the legislature that drafts the constraints of what is legal and what is not?

65. The deprivation to access to sex offender treatment is in direct contradiction to the SOLSA requirements, and the department lacks any legitimate penological justification for the malicious treatment suffered at their hands by Mr. Anderson.

66. Defendant's have violated Mr. Anderson's protected liberty interests under the Fourteenth Amendment by knowingly and willfully implementing and enforcing a policy and actual practice of arbitrarily depriving some offenders of statutorily-mandated treatment despite actual knowledge that such deprivations would make the offenders ineligible for parole and release, causing the individual to unnecessarily languish in prison indefinitely.

67. Nothing proves this fact more, than Warden Ryan Flores decision to close the entire SOTMP program at Centennial, and move the entire program to Fremont County Correctional Facility, a facility that did not afford any more additional beds for treatment. This deprived access to 96 beds for treatment. This means that Flores made a policy decision to prioritize the housing of violent offenders who have committed institutional murders over the rights of individuals eligible to be released and participating in a program required for release. This is a clear form of a policy choice that allows for the complaint to be pursued in the official capacity as well as the individual capacity.

68. Defendant's have implemented and enforced these policies and actually practiced enforcing them deliberately and indifferently to individuals rights for years with a clear pattern of behavior of the intent to continually deprive Mr. Anderson and similarly situated inmates of access to programming indefinitely. The Defendant's deliberate indifference has caused irreparable significant harms with no immediate cure, and therefore necessitates this legal action.

## E.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?   _X__ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):                SHUTTERS, FIELDS, BOXBERGER, PALORANTA

Docket number and court:                PEOPLE V. SHUTTERS, PEOPLE V. PALORANTA

Claims raised:                          SEE LEXUS NEXUS

Disposition: (is the case still pending?
Has it been dismissed? Was relief granted?)      <u>WAIVED APPEAL, NON FRIVOLOUS, RELIEF
STAYED PENDING DISPOSITION OF APPEAL,
BUT RELIEF PRESERVED ON MERITS</u>

Reasons for dismissal, if dismissed:      <u>EXCESSIVE FORCE UNPROVABLE DUE TO
DOCTORED DETECTIVE RECORDING AND
CENSORED MEDICAL REPORTS</u>

Result on appeal, if appealed:      <u>DEFENDANT WAIVED APPEAL TO SAVE
COURT TIME</u>

## F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in
federal court regarding prison conditions. See 42 U.S.C. § 1997e (a). Your case may be
dismissed or judgment entered against you if you have not exhausted administrative
remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

   _X__ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

   _X__ Yes ___ No (*check one*)

***GRIEVANCES AVAILABLE UP TO STEP 3, EXHAUSTED, if REQUESTED BY THE COURT:***

## G.    REQUEST FOR RELIEF
*State the relief you are requesting or what you want the court to do. If additional space is needed to
identify the relief you are requesting, use extra paper to request relief. Please indicate that
additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR
RELIEF."*

   Plaintiff Anderson respectfully requests that these Defendants be cited to appear and answer

to the challenged conduct and that this Honorable Court enters judgment against these Defendants,

including, but not limited to the following:

   a.   Declaratory Judgment – requesting that the Court enter an Order determining that Plaintiff

Anderson has a protected liberty interest in receiving sex offender treatment, an Order that Defendants have unlawfully deprived Plaintiff Anderson of his substantive and procedural rights to due process under the law, and an Order that Plaintiff Anderson has suffered significant deliberate and malicious harm from the challenged Defendant's conduct.

b. Injunction Relief – requesting that the Court enter an order for permanent injunction relief requiring Defendants and their officers to provide treatment as statutorily required, permit virtual treatment or relocation to metropolitan area to receive treatment, permit Plaintiff Anderson to receive treatment from privately retained therapists at the State's expense, prioritize treatment to individuals serving indeterminate sentences past their Parole Eligibility Date, and to maintain a transparent and reliable Global Referral List that is free from alterations or tampering.

c. Plaintiff Anderson requests that the Court award damages:

    a. Actual and special damages against Defendants in an amount to be proven at trial;

        i. However, the damages requested amount to $10,000,000.00. **This amount is directed at each individual Defendant, and punitive damages may exceed this amount.**

        ii. For the deliberate DNA manipulation of Yvonne "Missy" Woods, Plaintiff Anderson requests an additional $10,000,000.00 for being 2 of the 652 inmates already determined by the Kansas Bureau of Investigation laboratory audit of her work of having alarming and unconstitutional issues.

        iii. For the Colorado Bureau of Investigation's knowingly allowing Woods to stay on the job despite concerns of the quality and reliability of her work over at least a decade (**Plaintiff Anderson was harmed during this period of negligence**), and for failing to seriously investigate several warnings about her professional conduct, the damages requested against the CBI amount to

$10,000,000.00

    iv.  Requested damages for 338 default days at 100.00 per day amount to $33,800.00.

    v.  Requested damages for 486 default days at 200.00 per day amount to $97,200.00.

    vi.  Requested damages for 763 default days at 300.00 per day amount to $228,900.00

    vii.  Requested damages for 883 default days at 500.00 per day amount to $441,500.00

    viii.  Requested damages for denied access to Federal Pell Grants at approximately $7,395.00 per year. From 2019 till 2025, this amounts to $44,370.00 in damages.

    ix.  Requested damages for 3,453 days of wrongful conviction and false conviction amounting to $1,200.00 per day, or damages requests of $4,136,600.00.

b.  Attorney's fees and costs;

c.  Prejudgment and Post judgment interest

    i.  The interest to accrue at a rate of compounded interest annually at the rate of 8 percent or .08, compounded annually; and calculated off $10,845,770.00 total.

    ii.  The starting annual interest total requested is $867,661.60.

    iii.  The interest to accrue on the wrongful conviction and false conviction damages at a rate of compounded interest annually at the rate of 8 percent or .08, compounded annually; and calculated off $4,136,600.00 total.

    iv.  The starting annual interest total requested is $330,928.00.

v.   The total damages requested amount to $14,982,370.00.

vi.   The first year interest amounts to $1,198,589.60

vii.   The total damages requested from year two amount to $16,180,959.60.

viii.   The second year interest amounts to $1,294,476.77.

ix.   The total damages requested amount to $17,475,436.37.

x.   The third year interest amounts to $1,398,034.91.

xi.   The total damages requested from year three amount to $18,873,471.00

xii.   The fourth year interest amounts to $1,509,877.70.

xiii.   The total damages requested from year four amount to $20,383,348.70.

xiv.   The fifth year interest amounts to $1,630,667.90.

xv.   The total damages requested from year five amount to $22,014,016.60.

xvi.   The sixth year interest amounts to $1,761,121.33.

xvii.   The total damages requested from year six amount to $23,775,137.93.

xviii.   The seventh year interest amounts to $1,902,011.03.

xix.   The total damages requested from year seven amount to $25,677,148.96.

xx.   The eighth year interest amounts to $2,054,171.92.

xxi.   The total damages requested from year eight amount to $27,731,320.88.

xxii.   The ninth year interest amounts to $2,218,505.67.

xxiii.   The total damages requested from year nine amount to $29,949,826.55.

xxiv.   The tenth year interest amounts to $2,395,986.12.

xxv.   The total damages requested from year ten amount to $32,345,812.67.

xxvi.   In addition to the damages sought is the request of $75,000.00 per year deprived income salary from 2015 till 2025 amounting to $750,000.00.

xxvii.   The final damages sought amount to $33,095,812.67.

d.  Such other relief, both general and special, to which Plaintiff Anderson may have

suffered irreparable harm.

    **i.** Immediately transferred to an incentive-program, restored with a state-paid canvas and painting supplies, restored with a state-paid play station 4 to include games and accessories.

    **ii.** Immediately enrolling Mr. Anderson in a Bachelor's program.

    **iii.** Access to a computer to continue writing novels and poetry collections, and state-paid printing costs and assistance in publication ventures.

    **iv.** Immediate parole plan development, and treatment plan to expedite Mr. Anderson's release, or his immediate release from custody.

e. This list is not limited or constrained, meaning appointed counsel may enter into any agreement to expand damages sought, seek arbitration to resolve this lawsuit, reduce or increase any damages sought against each individual defendant, or request settlement for an amount not to exceed $20,000,000.00; which amounts to a legal cap, unless a jury decides to expand that monetary figure with punitive damages. Punitive damages may exceed this amount but compensatory damages may not. The accrued interest rate is considered exempt to legal binding cap and may accrue annually at compounding interest from 2015 till current date of 2025 at annual compounded interest rate of .08 percent, and is a separate category of damages sought without a legal cap. Both the categories of damages sought accrue interest individually, and both interest categories are exempt from legal cap and may exceed $20,000,000.00 cap.

Any damages are agreed to be paid to any *pro bono* litigant counsel at the rate of 33%, upon order of the court appointing counsel, to include 1/3 of any settlement, even if the court appoints private counsel. Although Mr. Anderson would be under no obligation to propose such a splitting of any settlement, it is the standard of the legal community and is implicitly invoked to allow counsels equal opportunity to receive compensation for assistance in prospering this litigation.

f. Finally, the relief requested is a formal apology from the Defendant's for harming Mr.

Anderson, and a formal apology from the Defendant's to Mr. Anderson's next of kin for depriving her access to a reasonable opportunity to having a productive and supportive father in her life. Any settlement will not be considered without formal apology and written declaration of wrong.

      g. Formal jury trial to present violations, absent successful arbitration steps to avoid costly discovery phase. All settlement steps taken in a successful arbitration step or remedy to this civil rights action will be subject to a non-disclosure agreement and confidential agreement by all relevant parties to include Plaintiff Anderson.

**For any defendants not mentioned specifically in claims, they are implied by their role in their agencies that are sued, and should not be dismissed without first afforded Mr. Anderson counsel to amend proceedings and to further expand the record as to specific facts relevant to their roles in the deprivation of Mr. Anderson's substantial constitutional rights. For the pending facility transfers, and inability to access a law library in a speedily manner, he humbly, dutifully, and courageous requests appointment of counsel in attached motion prior to dismissal of any of the defendants listed in the above mentioned action.**

## H.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

(Plaintiff's signature)

Chayce A. Anderson, #175290
C.C.C.F.
6564 St. Hwy. 96
Olney Springs, CO 81062

03/27/2025
(Date)