**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-01038-RTG

CHAYCE AARON ANDERSON,

Plaintiff,

v.

YVONNE "MISSY" WOODS, Colorado Bureau of Investigation Serologist,
RYAN FLORES, Warden – Centennial,
JARED POLIS, Governor,
PHILIP J. WEISER, Attorney General,
MOSES "ANDRE" STANCIL, Executive Director,
AMANDA RETTING, Sex Offender Treatment and Monitoring Program Administrator and Department of Corrections Representative on the Sex Offender Management Board,
KIMBERLY KLINE, Chief of Behavioral Health at the Department of Corrections and Chair of the Sex Offender Management Board,
MALEBRANCHE, Major of Programs at Centennial Correctional Facility,
STRAWN, Captain of Prison Operations for Kitchen at Centennial Correctional Facility,
MICHAEL RIVERA, Lieutenant for Kitchen at Centennial Correctional Facility,
STEER, Lieutenant for Kitchen at Centennial Correctional Facility,
LAKEISHA SHARP, Parole Board Member,
STEPHEN HOLMES, Parole Board Member,
CORE CIVIC,
COLORADO BUREUA OF INVESTIGATION (C.B.I.)
YVONNE WOODS,
CHRIS SCHAEFER, Director of Colorado Bureau of Investigation,
STAN HILKEY, Executive Director of Colorado Bureau of Investigation,
CITY OF FORT COLLINS,
LARIMER COUNTY,
GORDON MCLAUGHLIN, District Attorney of 8th Judicial District,
MATT MAILLARO, Assistant Deputy Attorney,
STATE OF COLORADO,
GUI BOSCH, Warden of Crowly County Correctional Facility, and
COLORADO DEPARTMENT OF CORRECTIONS,

Defendants.

## ORDER TO FILE AMENDED PRISONER COMPLAINT

Plaintiff Chayce Aaron Anderson is a convicted and sentenced state prisoner currently incarcerated at the Crowley County Correctional Facility in Olney Springs, Colorado. Plaintiff initiated this action by filing *pro se* a Prisoner Complaint (ECF No. 1). He has been granted leave to proceed under 28 U.S.C. § 1915 (ECF No. 5).

The Court must construe Plaintiff's pleading liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110. For the reasons below, Plaintiff must file an amended Prisoner Complaint to pursue claims in this action.

## I. PRISONER COMPLAINT

Plaintiff brings this action under 42 U.S.C. § 1983 against twenty-four defendants sued in both their individual and official capacities. (ECF No. 1 at 4-16). Plaintiff asserts the following ten claims: (1) "Violation of Due Process and Protected Liberty Interest in Unjustified Denial of Progression of Court-Ordered Treatment"; (2) "Violation of Slave Labor Act, State Officials Requiring Inmates to Work Multiple Positions in Direct Violation of their Substantial Rights"; (3) "Violation of Due Process, Punitive-Restrictive Punishment in Violation of Due Process and Equal Protection and Deliberate Indifference in Terms of Depriving Plaintiff Anderson Reasonable Ability to Continue Post-Educational Pursuits"; (4) "Violation of the Due Process , Punitive Move to Private

Prison Core Civic, a facility already prior refused by Plaintiff Anderson in 2017 at both Crowley and Bent County, shows a clear disregard to the constitutional rights of Plaintiff Anderson”; (5) “Violation of Due Process, Equal Protection, and Deliberate Indifference to the Development of Colorado Bureau of Investigation Analyst Yvonne ‘Missy’ Woods Fabrication, omitting DNA results in 652 cases from 2008 till 2023, first half of her career”; (6) “Violation of Due Process, Equal Protection and Deliberate Indifference to the Substantial Liberty Interests of Mr. Anderson’s person due to excessive delays, and the State relying on Procedurally-defaulted arguments”; (7) “The issuance of PEOPLES EXHIBIT FOUR amounts to an unconstitutional interpretation of the Fourth Amendment of the United States Constitution”; (8) “The certification of a verdict of guilty was unconstitutional when the unanimous verdict form was missing Colorado State University juror Anne Avery’s signature and it was unconstitutional to allow the prosecution to tamper with a jury’s composition allowing for an unheard of seventh peremptory strike”; (9) Defamation of Character committed intentionally by the prosecution maliciously, when they have repeatedly stated that Mr. Anderson is infected with H.I.V.”; and (10) “Class-Action Factors that apply liberally to Mr. Anderson’s case, that justify relief, and show forth federal law violations and constitutional violations by the Colorado Department of Corrections and all of their employees.” (*Id.* at 19-44). Plaintiff requests numerous forms of declaratory and injunctive relief, compensatory damages, and punitive damages. (*Id.* at 45-50).

## II. PLEADING DEFICIENCIES

### A. Joinder

As noted above, Plaintiff asserts ten claims for relief against twenty-four defendants. Many of the claims are unrelated and appear to run afoul of Fed. R. Civ. P. 20, which provides:

> (2) ***Defendants***. Persons . . . may be joined in one action as defendants if:
>
> > (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> >
> > (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a). The phrase "same transaction or occurrence" is flexible and contemplates "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *SEC v. Woodruff*, 778 F. Supp.2d 1073, 1098 (D. Colo. 2011). Plaintiff, however, does not identify any logical relationship among the twenty-four defendants that would permit their joinder in one action. For example, Claims One – Four challenge the conditions of Plaintiff's confinement whereas Claims Five – Nine involve challenges to Plaintiff's state court criminal proceedings. Requiring adherence to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

In the amended Prisoner Complaint, Plaintiff must comply with the joinder provisions of the Federal Rules of Civil Procedure.

**B. Rule 8**

In addition, the Prisoner Complaint does not comply with Rule 8, which requires a complaint to contain a short and plain statement of the facts explaining why each claim succeeds. Fed. R. Civ. P. 8(a)(2). A complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." *Id.* The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct." Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules. Vague or unintelligible pleadings violate Rule 8.

In the amended Prisoner Complaint, Plaintiff must allege in a clear, concise, and organized manner what each defendant did to Plaintiff, when the defendant did it, how the defendant's action harmed him, what specific legal right he believes the defendant violated, and what specific relief he requests as to each defendant. *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (citations omitted).

**C. Individual vs. Official Capacity Claims**

Plaintiff sues all twenty-four defendants in both their individual and official capacities. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v.*

*Montoya*, 662 F.3d 1152, 1161, n. 5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30, 27 (1991)).

To pursue a § 1983 claim against a defendant in his or her individual capacity, allegations of “personal participation in the specific constitutional violation complained of [are] essential.” *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011); *see also Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (“[i]ndividual liability . . . must be based on personal involvement in the alleged constitutional violation.”). There is no vicarious liability under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (“vicarious liability is inapplicable to *Bivens* and § 1983 suits”). Thus, Plaintiff must allege specific facts that make clear who did what. *See Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013) (holding that active-voice yet undifferentiated allegations that “the defendants” infringed a plaintiff’s rights is insufficient to plead personal participation).

Furthermore, although a defendant can be liable based on his or her supervisory responsibilities, a claim of supervisory liability must be supported by allegations that demonstrate personal involvement, a causal connection to the constitutional violation, and a culpable state of mind. *See Schneider v. City of Grand Junction Police Dep’t*, 717 F.3d 760, 767-69 (10th Cir. 2013) (discussing standards for supervisory liability).

In the amended Prisoner Complaint, Plaintiff must allege the personal participation of each named defendant he sues in their individual capacities.

In comparison, official capacity suits “generally represent only another way of pleading an action against an entity of which an officer is an agent.” *Monell v. Dep’t of*

*Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). To the extent Plaintiff asserts claims against employees or agents of the State of Colorado in their official capacities, he has not named an entity separate from the State of Colorado. *See Stump v. Gates*, 777 F. Supp. 808, 814-16 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993). However, the State of Colorado and its entities are immune from liability under § 1983 pursuant to the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Meade v. Grubbs*, 841 F.2d 1512, 1525-26 (10th Cir. 1988). It is well established that absent an unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and their agencies. *Ramirez v. Oklahoma Dept of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994). The State of Colorado has not waived its Eleventh Amendment immunity, *see Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988), and congressional enactment of 42 U.S.C. § 1983 did not abrogate Eleventh Amendment immunity, *see Quern v. Jordan*, 440 U.S. 332, 340-345 (1979). Thus, Plaintiff's official capacity claims for damages against the State of Colorado and its employees are barred by the Eleventh Amendment.

However, the Eleventh Amendment does not bar a federal court action so long as the plaintiff seeks in substance only prospective relief and not retrospective relief for alleged past violations of federal law. *Verizon Maryland v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521

U.S. 261, 296 (1997)); *Hill v. Kemp*, 478 F.3d 1236 (10th Cir. 2007); *see also Ex parte Young*, 209 U.S. 123, 159-60 (1908). Thus, any claim other than one for prospective injunctive relief against the State of Colorado (or one of its employees in an official capacity) is barred. If Plaintiff intends to pursue official capacity claims in the amended Prisoner Complaint, he must seek only prospective injunctive relief as to those defendants.

### D. Legal Standards

The allegations necessary to establish a § 1983 claim vary with the claim's constitutional underpinning. *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) ("Our first task in any § 1983 suit alleging a constitutional violation is to isolate the precise constitutional violation with which the defendant is charged.") (cleaned up). It appears that Plaintiff asserts the following claims.

#### *1. Sex offender treatment*

Plaintiff's first claim challenges a denial of access to the Colorado Department of Corrections ("CDOC") sex offender treatment program ("SOTMP"). (ECF No. 1 at 19-22). He contends he has been denied an "equal opportunity to parole" because the State of Colorado has "failed to progress or treat him reasonably" in SOTMP from 2017 to 2025. (*Id.* at 19). He further states that CODC "repeatedly listed [him] as ineligible for treatment due to their miscalculations" of his sentences and corresponding parole eligibility. (*Id.* at 19-20). Plaintiff next alleges that a policy change in November 2023 caused him to be "removed without a 'termination' hearing." (*Id.* at 21). He also argues

that he was wrongfully denied parole. (*Id.* at 22). Plaintiff finally asserts that Defendants Amanda Retting and Kimberly Kline have “active knowledge of the violations occurring against Plaintiff Anderson’s person for a long period of time, yet neither took action to resolve the constitutional violations.” (*Id.* at 22).

In Claim Ten, Plaintiff also appears to seek class certification based on CDOC’s “continued failure and refusal to provide statutorily mandated treatment to inmates serving indeterminate sentences.” (ECF No. 1 at 34-44).

A convicted sex offender in Colorado may have a state-created liberty interest in continued sex offender treatment if such treatment is required to be eligible for parole. *See Beebe v. Heil*, 333 F.Supp.2d 1011, 1017 (D. Colo. 2004). “However, the right to [sex offender] treatment is not absolute or unconditional.” *Allen v. Clements*, 930 F. Supp.2d 1252, 1264 (D. Colo. 2013). Thus, the court in *Beebe v. Stommel*, No. 02-cv-01993-WYD-BNB (D. Colo. Nov. 13, 2006) (ECF No. 163 at 34-35), held it is constitutional to condition receipt of sex offender treatment on an “inmate’s willingness and ability to comply with the rules and regulations governing treatment” and that courts must defer to prison officials “to determine what rules and regulations are necessary to ensure successful treatment that meets institutional concerns.” Similarly, in *Doe v. Heil*, 533 F. App’x 831 (10th Cir. 2013), the Tenth Circuit concluded that a convicted sex offender in Colorado who refused to comply with the program’s prerequisites for admission did not have a liberty interest in being reinstated into the sex offender treatment program. The Tenth Circuit reasoned that

> [i]rrespective of whether a liberty interest would exist under the circumstances of *Beebe*, there is a very material difference between prison administrators terminating an inmate's participation in a sex-offender treatment program and such administrators refusing an inmate's reentry to the program because he refuses to abide by generally applicable requirements for program participation.

*Id.* at 842; *see also Sheratt v. Utah Dep't of Corrections*, 545 F. App'x 744, 748-49 (10th Cir. 2013) (citing *Doe* and concluding that the plaintiff's inability to complete the Utah Department of Corrections SOTP, based on his refusal to admit guilt, which was a requirement for participation in the program, did not implicate the Constitution).

Moreover, the tenets of the SOTMP which require the offender to participate in therapy have been determined to be constitutional and in furtherance of a legitimate penological interest:

> When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault. States thus have a vital interest in rehabilitating convicted sex offenders. Therapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism. An important component of those rehabilitation programs requires participants to confront their past and accept responsibility for their misconduct.

*McKune v. Lile*, 536 U.S. 24, 33 (2002) (citations omitted) (upholding components of the State of Kansas' clinical rehabilitative program for convicted sex offenders, including a polygraph examination concerning the offender's sexual history); *see also Searcy v. Simmons*, 299 F.3d 1220, 1228 (10th Cir. 2002) ("The state's interest in rehabilitating sex offenders is a valid one, and the requirement for admission of responsibility is considered a legitimate part of the rehabilitative process."); *see also, e.g., People v.*

*Sabell,* 452 P.3d 91, 100 (Colo. App. 2018) ("numerous divisions of this court have considered the constitutionality of SOLSA and have rejected all such challenges") (citing *People v. Collins*, 250 P.3d 668, 679 (Colo. App. 2010); *People v. Firth*, 205 P.3d 445, 452 (Colo. App. 2008); *People v. Lehmkuhl*, 117 P.3d 98, 108 (Colo. App. 2004); *People v. Dash*, 104 P.3d 286, 290 (Colo. App. 2004); *People v. Oglethorpe*, 87 P.3d 129, 133 (Colo. App. 2003); *People v. Strean*, 74 P.3d 387, 393 (Colo. App. 2002)). And disagreement with therapists regarding treatment does not constitute a constitutional violation. *See Firth v. Shoemaker*, 496 F. App'x 778, 791 (10th Cir. 2012) ("the incidents that [plaintiff] relates involve disagreements between him and his therapists regarding characterizations of the facts he reported, rather than defendants forcing him to make false statements of fact in order to progress in treatment").

To the extent Plaintiff seeks to pursue a class action claim, Plaintiff is advised that he may not assert a claim on behalf of other individuals because a *pro se* litigant may not represent other *pro se* litigants in federal court. *See* 28 U.S.C. § 1654. A *pro se* litigant also is not an adequate class representative for a putative class action. *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000).

*2. Prison Work Conditions*

Plaintiff alleges in Claim Two that Defendants Rivera, Steer, and Strawn violated his constitutional rights in connection with his prison job in the kitchen. (ECF No. 1 at 22-24). According to Plaintiff, he "was required to do 2-3 inmates positions each shift, five days a week, for 202 days," which included "having to cook the food, serve the

food, wash the dishes, and wash the pots and pans" without "time to take a break." (*Id.* at 23). Plaintiff also asserts that Defendants Rivera, Steer, and Strawn "deliberately chose to work [Plaintiff] on [his] holy days of the Sabbath (Saturday) and holy days of (Sunday)" based on his Lutheran religion. (*Id.*). He claims that the "excessive work load prevented [Plaintiff] from reasonable access to telephones in the 30-45 days leading up to [his] Grandpa Marlow's death." (*Id.*). Plaintiff further alleges he was wrongfully fired from his prison job on February 8, 2024, "to prevent [him] access to incentive living program that [he] had already qualified for years at Arkansas Valley Correctional Facility and for challenging their deliberate failure to enforce and practice actual CDOC Headquarter Kitchen policy." (*Id.* at 24). Based on these allegations, it appears that Plaintiff is attempting to assert violations of both the First and Eighth Amendments within this single claim.

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). The Eighth Amendment is violated when a prison official acts with deliberate indifference to a substantial risk of serious harm to an inmate. *Id.* at 825, 828. An Eighth Amendment claim must satisfy two requirements. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, "a prison official must have a 'sufficiently culpable state of mind.'" *Id*. This

second requirement is subjective, rather than objective: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Negligent conduct does not implicate the Constitution. *See Daniels v. Williams,* 474 U.S. 327 (1986) (jail officer not liable for negligent acts which caused inmate to slip and fall); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (medical negligence does not violate the Eighth Amendment).

Under the First Amendment, "an inmate must be accorded a reasonable opportunity to pursue his religion." *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991). A prisoner must allege a substantial burden on his or her sincerely held religious beliefs. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) "[T]he exercise of religion often involves not only belief and profession but the performance of (or abstention from) physical acts: assembling with others for a worship service, participating in sacramental use of bread and wine, proselytizing, abstaining from certain foods or certain modes of transportation." *Yellowbear v. Lampert*, 741 F.3d 48, 54 (10th Cir. 2014) (internal quotation marks omitted); *see also Kay*, 500 F.3d at 1220 (rejecting rule that prisoner must show religious exercise was "'necessary' to the practice of his religion").

Finally to state a valid retaliation claim under the First Amendment, Plaintiff must demonstrate (1) he was engaged in constitutionally protected activity, (2) a defendant's

actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) defendant's adverse action was substantially motivated as a response to Plaintiff's constitutionally protected activity. *See Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (quotes and citation omitted).

*3. Loss of Personal Property*

In Claim Three, Plaintiff alleges he was "punitively punished without justification" when he was moved from Arkansas Valley Correctional Facility – incentive pod to Centennial Correctional Facility Super-max," which resulted in "over $1200.00 of personal property to be deemed contraband." (ECF No. 1 at 24-25). He also states that the transfer resulted in the denial of "access to educational pursuits to earn a Bachelor's Degree" and that Defendant Malebranche "repeatedly denied Plaintiff Anderson reasonable access to continue his education while incarcerated at Centennial" by falsely asserting that "all classes would have to be paid for out of pocket despite Plaintiff Anderson qualifying for" grants and loans and by seizing "a significant amount of mail," which included his student ID, course registration forms, and information packets. (*Id.* at 25). The Court liberally construes Plaintiff's allegations as asserting a violation of due process.

Generally, random, unauthorized deprivations of property by state prison officials do not violate due process where adequate state post-deprivation remedies are available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Becker v. Kroll*, 494 F.3d 904, 921 (10th Cir. 2007) ("[W]here pre-deprivation remedies cannot anticipate and prevent a state actor's wrongful act, post-deprivation state tort remedies are adequate to satisfy due process requirements."). However, in *Hudson*, the Supreme Court distinguished between random, unauthorized deprivations of property and deprivations of property made pursuant to an established state procedure. *See also Wolfenbarger v. Williams*, 774 F.2d 358, 364 (10th Cir. 1985) ("This distinction between random, unauthorized conduct and conduct pursuant to established state procedure is significant."). For random and unauthorized deprivations of property, stating a due process claim under § 1983 requires a complaint to "allege facts sufficient to show deprivation, in this case the lack of an adequate state remedy." *Durre v. Dempsey*, 869 F.2d 543, 548 (10th Cir. 1989) (*per curiam*). "The fact that Colorado law permits a suit against a state correctional facility, *see* Colo. Rev. Stat. § 24–10–106(1)(b), may create a presumption of adequate due process and may stave off a facial attack, but it is not conclusive." *Freeman v. Dep't of Corr.*, 949 F.2d 360, 362 (10th Cir. 1991). "If in fact the state remedy was constitutionally insufficient, the [prisoner] may have a cause of action under section 1983 for the confiscation of his property." *Id.*; *see also Johnson v. Whitney*, 723 F. App'x 587, 594 (10th Cir. 2018).

On the other hand, "once the state has conferred a property interest, it may not

authorize the deprivation of such an interest without procedural safeguards that comport with the standards of federal due process." *Wolfenbarger*, 774 F.2d at 364. "Post-deprivation remedies alone are insufficient where the deprivation of property results from an established state procedure." *Griffin v. Hickenlooper*, 549 F. App'x 823, 828 (10th Cir. 2013) (unpublished). In such a case, courts must determine whether the affected plaintiff was afforded an appropriate level of process before his or her property was forfeited or destroyed. *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011). To assess the adequacy of the process, courts must balance the following three interests: (1) "the private interest that will be affected by the official action;" (2) "the Government's interest;" and (3) "the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

*4. Transfer to Different Facility*

Plaintiff next contends that his "move to private prison Core Civic, a facility already prior refused by Plaintiff Anderson in 2017 at both Crowley and Bent County, shows a clear disregard to the constitutional rights of Plaintiff Anderson." (ECF No. 1 at 25-26). He specifically argues that his current facility does not facilitate "his parole needs," which includes access to SOTMP and "is unable to provide Plaintiff Anderson any reasonable ability to pursue his educational or parole required classes." (*Id.* at 25). Plaintiff states that the facility is also violent and that "the Core Civic staff have no intention of fixing any of the issues that present particularly dangerous situations for

inmates.” (*Id.* at 26).

To state a Fourteenth Amendment due process claim, Plaintiff must allege facts to demonstrate he was intentionally deprived of a constitutionally protected interest in life, liberty, or property. *See Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). The existence of a constitutionally protected liberty interest depends upon the nature of the interest asserted. *See Sandin v. Conner*, 515 U.S. 472, 480 (1995). A prisoner is not entitled to any procedural protections in the absence of a grievous loss. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Generally, a liberty interest protected by due process may arise under the United States Constitution or state law. *See Sandin*, 515 U.S. at 483-84. However, “the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.” *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). State law may create a liberty interest if the conditions impose an “atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.” *Sandin*, 515 U.S. at 484. Relevant factors to be considered in determining whether certain conditions of confinement impose atypical and significant hardship in relation to the ordinary incidents of prison life include whether the conditions relate to and further a legitimate penological interest, whether the conditions are extreme, whether the conditions increase the duration of confinement, and whether the conditions are indeterminate. *See DiMarco v. Wyo. Dep’t of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).*See also Meachum v. Fano*, 427 U.S. 215, 223-25 (1976)); *Moody v. Daggett*, 429 U.S. 78, 87 n. 9, (1976) (absent a state-created liberty interest, neither a change in

a prisoner's security classification, nor a prisoner's transfer from one prison to another implicates a liberty interest within the meaning of the due process clause).

*5. Challenges to State Court Conviction and Proceedings*

In Claim Five, Plaintiff appears to challenge his underlying state court criminal conviction based on a Colorado Bureau of Investigation ("CBI") analyst Yvonne "Missy" Woods' fabrication, suppression, or omission of DNA results in his case, as well as 652 other cases from 2008 to 2023. (ECF No. 1 at 26-28). According to Plaintiff, he has challenged Defendant Woods' DNA findings in state court, but "the State of Colorado has attempted to the best of their ability to avoid these claims." (*Id.* at 26). Plaintiff contends that Defendant Wood "testified falsely in his hearings and trials that did indeed result in a false conviction and an unjust imprisonment." (*Id.* at 27-28).

In Claim Six, Plaintiff argues that his state court proceedings have involved "excessive delays, and the State relying on Procedurally-defaulted arguments," which has resulted in "3,453 days of false incarceration." (*Id.* at 28-30).

In Claim Seven, Plaintiff argues that the "issuance of Peoples Exhibit Four" violated his Fourth Amendment rights based on a constitutional challenge to "44.1 non-testimonial identification warrant law." (*Id.* at 30-31).

In Claim Eight, Plaintiff argues that "the certification of a verdict of guilty was unconstitutional" because it was missing a juror's signature, and that the jury's composition was affected by "an unheard of seventh peremptory strike." (*Id.* at 32-33).

Finally, in Claim Nine, Plaintiff contends that the prosecution defamed him by

repeatedly stating that Plaintiff "is infected with H.I.V." and depicted him as a "Morally Dangerous Individual." (*Id. a*t 33-34).

Plaintiff's claims challenging his state court criminal proceedings resulting in his conviction likely are barred by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). Pursuant to *Heck*, if a judgment for damages necessarily would imply the invalidity of a criminal conviction or sentence, the action does not arise until the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by the issuance of a federal habeas writ. *See id.* at 486-87.

Thus, if Plaintiff seeks damages under 42 U.S.C. § 1983 for claims that would imply that his criminal conviction was invalid, he must allege facts showing that the conviction has been reversed or otherwise deemed invalid. Otherwise, any federal claims which challenge the legality of his conviction may be barred by *Heck*. *See Callen v. Wyoming Dept. of Corrections*, 608 F. App'x 562, 563 (10th Cir. 2015) (holding that § 1983 malicious prosecution claim was barred by *Heck*, where there was no indication that plaintiff's conviction had been overturned); *Burden v. Wood,* 200 F. App'x 806, 807 (10th Cir. 2006) (determining that false arrest claim barred by *Heck* where plaintiff was convicted of charged offense and conviction had not been overturned).

Moreover, to the extent Plaintiff is asking the Court to intervene in ongoing state court criminal proceedings, the Court may not do so. *See Younger v. Harris*, 401 U.S. 37 (1971); *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997). Absent extraordinary

or special circumstances, federal courts are prohibited from interfering with ongoing state criminal proceedings. *Id*. Abstention under *Younger* is jurisdictional in nature, *see D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004), and is appropriate when three conditions are met:

> First, there must be ongoing state criminal, civil, or administrative proceedings. Second, the state court must offer an adequate forum to hear the federal plaintiff's claims from the federal lawsuit. Third, the state proceeding must involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997). If the three requirements are met, and no exceptions to *Younger* apply, a federal court must abstain from hearing the case. *See Weitzel v. Div. of Occupational & Profl Licensing*, 240 F.3d 871, 875 (10th Cir. 2001).

To establish extraordinary or special circumstances which may excuse application of *Younger* abstention, Plaintiff must be facing an irreparable injury that is both great and immediate. *See Younger*, 401 U.S. at 46. The exceptions to *Younger* provide only for a very narrow gate for federal intervention. *Phelps*, 59 F.3d at 1064 (internal quotation marks omitted). Plaintiff may overcome the presumption of abstention in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown. *Phelps*, 122 F.3d at 889 (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)). Courts have considered three factors in determining whether a prosecution is commenced in bad faith or to harass:

> (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by the defendants suspect class or in retaliation for the defendants exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions.

*Id.* It is Plaintiff's heavy burden to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment. *Id.* at 890.

## III. CONCLUSION

Accordingly, it is

ORDERED that Plaintiff shall file, within **thirty (30) days** from the date of this order, an amended Prisoner Complaint that complies with all the directives contained in this order. To be clear, Plaintiff must submit a single, fully completed Prisoner Complaint on the court-approved form as one document that contains all claims and allegations. Plaintiff is advised that the Court is not required to sort through multiple pleadings to ascertain his claims or compile the required information from multiple documents. It is

FURTHER ORDERED that Plaintiff shall obtain and utilize the court-approved Prisoner Complaint form (with the assistance of a case manager or the facility's legal assistant), along with the applicable instructions, at www.cod.uscourts.gov. It is

FURTHER ORDERED that, if Plaintiff fails to file an amended Prisoner Complaint that complies with this order within the time allowed, the action may be dismissed in whole or part without further notice.

DATED April 7, 2025.

BY THE COURT:

Richard T. Gurley
United States Magistrate Judge